WILLIAM ROBERTS *vs.* CITY OF CAMBRIDGE.

Middlesex.     March 21, 1895. — June 28, 1895.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Contract by a City by its Water Board — Specific Performance.*

A lawful contract made by a city by its water board to supply a person whose land and water it has taken by the right of eminent domain with a quantity of water from its reservoir " sufficient for washing and steam purposes " at his mill, " to take the place of the water heretofore furnished to him by us for such purposes," may be specifically enforced in equity according to its legal import.

BILL IN EQUITY, filed May 12, 1894, for the specific performance of an agreement to open a four-inch gate at the gate-house at the defendant's dam at Stony Brook, and allow thereafter a quantity of water to pass through from its reservoir above the dam to the plaintiff's mill sufficient for washing and steam purposes. Hearing before *Lathrop*, J., who, at the request of the parties, reported the case for the consideration of the full court, in substance as follows.

The plaintiff was, on February 27, 1885, the owner of certain real estate situated partly in Waltham and partly in Weston, and delineated upon a plan used at the hearing, and also of a certain estate south of River or South Street, described upon the plan as the dam, paper-mill, and Stony Brook, together with the lots upon which the paper-mill was situated. The estate consisted of land above the dam bordering upon a basin of water created by the dam, which basin was upon said date of about thirty-five acres in extent, and the property in the water and the right and privilege to dam and hold up the same was in the plaintiff. Below the street the plaintiff owned and used the premises as and for a paper-mill, and had the right and estate to use the water for power, for washing, and for other manufacturing purposes.

Upon the same date, the city of Cambridge, acting under the authority of St. 1884, c. 256, authorizing it to take the waters of Stony Brook as set forth in § 1 in said chapter, did take, by

a paper taking, all the waters of Stony Brook and its tributaries, and all the property comprised within certain white exterior lines set forth in the plan above mentioned, for the purpose of laying, constructing, and maintaining aqueducts, water-courses, reservoirs, storage basins, dams, and other works necessary and proper for collecting, storing, and retaining the waters of Stony Brook and the tributaries thereto, and the discharging, taking, and distributing the same to and among the inhabitants of the city of Cambridge.

Subsequently, the city actually took from the plaintiff, among other property, the water of the basin, and by means of a high dam, hereinafter mentioned, which it proceeded to erect across the basin at a point a short distance above the dam belonging to Roberts, has since stored and held the water so as to greatly diminish the water rights of Roberts in the premises. The erection of the dam by the city increased the size of the basin above the dam, and the city since the erection of the dam has held the water as against the rights, privileges, and estate of the plaintiff, other than as hereinafter set forth.

Within three years from the time that the water was actually withdrawn by the city, the plaintiff applied to the Superior Court for the assessment of damages, as provided by St. 1884, c. 256, § 5, and the Superior Court appointed three disinterested persons as commissioners.

During the hearing before the commissioners, it appeared that the petitioner not only suffered a loss to his mill and property because of a great diminution of the water for power, but that he would be put, by the loss of this water, to great expense on account of his need for water for washing and manufacturing purposes at his mill. He had no other means, and could not without great expense acquire other means to provide water for these purposes, and so would be compelled to close his mill, unless some method could be employed to provide for him a quantity of water for that purpose. The method that he had employed up to that time had furnished him not only a large supply of water for these and for purposes of power during the wet season, but also a sufficient amount for the dry season. And it appeared that the taking by the city would, unless some remedy could be afforded, compel him to abandon his mill.

The defendant while it was erecting its dam had, so that the plaintiff could have proper water for washing and purposes other than for power, supplied the plaintiff with water from another source than Stony Brook.  Upon December 19, 1887, its water board passed the following votes, which were transmitted to the plaintiff as therein provided :

" Voted, That, on December 19, 1887, we will open the four-inch gate at the gate-house of our dam at Stony Brook and allow thereafter a quantity of water to pass through from the reservoir above the dam to Roberts Mills, sufficient for washing and steam purposes, to take the place of the water heretofore furnished to him by us for such purposes.

" Voted, That the president be instructed to write to Mr. William Roberts informing him of the action of the board, and furnish him an attested copy of the foregoing votes."

This action of the defendant was put in evidence before the commissioners, with the assent of all the parties concerned, and such votes were deemed and treated by the commissioners as an agreement and act done by the city that would insure to the plaintiff the use of the water for the future for said purposes.  In the assessment of damages in the premises the commissioners entirely eliminated the claim that the plaintiff had made concerning the water on account of washing and for steam purposes, and about August 1, 1888, made a report assessing damages to the plaintiff, which were lessened by this elimination.

This report, which recited that " the petitioner is entitled to recover of the city of Cambridge, as damages sustained by the petitioner in his property by the taking of his water and water rights and injury to his real estate, water, and water rights, . . . the sum of twenty-two thousand four hundred and twenty dollars, including in said sum interest from the time of the actual taking . . . to the date of this award, to wit, August 1, 1888," was accepted by the Superior Court, and the damages were subsequently paid by the defendant.

Shortly after said votes were passed, with the knowledge of the commissioners and with the agreement of the plaintiff and. the defendant, the defendant opened the four-inch gate at the gate-house of its dam, and allowed sufficient water for washing and steam purposes at the plaintiff's mill, in accordance with said

votes. Everything necessary to be done in order that the water could be communicated from the defendant's dam to the plaintiff's mill to be used for the purposes designated was done, and the city, through its water board, since the date of the award and up to on or about July 1, 1893, supplied the water, in accordance with the agreement.

The plaintiff assented to this arrangement upon the part of the city to supply him with such water, and the award of the commissioners lessening the amount of his damages in the premises upon the promise, as aforesaid, of the defendant to supply him with such water after December 19, 1887.

On or about July 1, 1893, the defendant neglected to supply the plaintiff with water through said gate, although often requested so to do, and in consequence thereof the plaintiff was put to great expense and inconvenience. The defendant refused to fulfil the contract so to supply water to the plaintiff.

In his argument before the commissioners, the counsel for the city said: "We have passed a vote whereby we will open those gates every day when the water does not run over the dam, and supply to him a million gallons of water, which he may use for wash and condensing water, if he can do so, every day." His argument, however in part at least, presented the vote rather as affecting the probabilities of all the water being used than as conferring a right.

Chapter 39, § 3, of the city ordinances of 1880, in relation to the "Water Works," provided: "The board, so constituted and organized, shall have and exercise all the powers vested in the city council by an act of the Legislature of Massachusetts, approved on the twenty-fifth day of April, A. D. 1865, entitled 'An Act for supplying the city of Cambridge with pure water,' and by an act of the said Legislature, approved on the first day of May, A. D. 1875, entitled 'An Act to provide a further supply of water for the city of Cambridge,' and by any acts in addition to either of said acts, so far as the same can be legally delegated." An act of the Legislature was approved on the twenty-first day of May, A. D. 1884, entitled "An Act to provide a further supply of water for the city of Cambridge."

No vote or order of the city council of Cambridge was passed having any relation to the votes of December 19, 1887.

If in any aspect of the case the plaintiff was entitled to relief in equity, such order and decree was to be made as to the court might seem just and proper; otherwise, the bill was to be dismissed.

*G. A. A. Pevey*, for the defendant.

*E. C. Bumpus*, for the plaintiff.

HOLMES, J.   This is a bill for the specific performance of an alleged contract. The material facts are as follows. The defendant had taken the water of Stony Brook, under St. 1884, c. 256, subject to prior rights given to other towns. See St. 1884, c. 257. Before the damages were assessed, the defendant's water board passed the following votes, which were communicated to the plaintiff and assented to by him.*

At the hearing before the commissioners on the amount of damages to be paid to the plaintiff by the defendant, these votes were put in evidence, were relied on by the counsel for the defendant, were treated by the commissioners as an agreement by the city, and led the commissioners to eliminate the plaintiff's claim for damages in respect of water for washing or steam purposes, with the result of lessening the amount of the commissioners' award. The city paid the award, and for a time supplied the plaintiff with water as agreed. Since then, however, it has neglected and refused to fulfil the contract, to the great inconvenience and expense of the plaintiff.

The defendant objected to evidence of the foregoing facts; but as it does not appear how they were proved, it is to be assumed that they were proved by proper evidence, if the facts, however proved, were competent. There is no question before us of inquiries addressed to a commissioner as to the ground of his decision.

It is objected that no evidence was admissible of the facts because the commissioners were to assess all the damages suffered by the plaintiff, but if there was a binding contract to give the plaintiff a part of the water embraced in the taking, such a contract would have the same effect as a valid exception of the same amount of water from the original taking, and would cut down the damages accordingly. See *Morse, petitioner*, 18 Pick. 443, 447; *Old Colony Railroad* v. *Miller*, 125 Mass. 1, 5; *Bicknell* v.

---

\* The votes are set forth upon page 178.

*New York & New England Railroad*, 161 Mass. 428; *Huston* v. *Cincinnati & Zanesville Railroad*, 21 Ohio St. 235; Mills, Em. Dom. (2d ed.) §§ 112, 113.

It is found as a fact in the report that the transaction amounted to a contract, a finding warranted by the evidence. The accepted vote purported to be a contract. By the statute and the city ordinance the water board had all the powers of the city under the act. St. 1884, c. 256, § 10. Cambridge Ordinances, 1880, c. 39, § 3. If it should be doubted whether, supposing the city to have had power to make the contract, the power was one of those conferred on the water board, there was evidence of ratification. The city acted in pursuance of the vote by opening the four-inch gate and allowing the plaintiff sufficient water for washing and steam purposes, it argued from it to the commissioners and it paid the award as diminished in consideration of the vote, although no doubt the argument for the city to the commissioners, in part at least, seemed to present the vote rather as affecting the probabilities of all the water being used than as conferring a right. At that time *Howe* v. *Weymouth*, 148 Mass. 605, had not been decided.

It is urged that the city had no power to make the contract, and that it could not sell water for any purposes except those public ones mentioned in § 1 of the act, of which this was not one. But we see nothing beyond the power of the city in the vote, and still less anything unlawful. The power to make such a contract with a stranger might be limited to the surplus naturally incident to the taking of water for public use. But this contract was made with one from whom more water was taken at the same time, and therefore in its practical effect merely cut down the amount taken from the plaintiff and to be paid for by the defendant, — a perfectly lawful object.

The city having made a lawful contract to the effect set forth in the vote, there seems to be no reason why the contract should not be specifically enforced according to its legal import. *Raphael* v. *Thames Valley Railway*, L. R. 2 Ch. 147. No objection to the jurisdiction is taken in the answer. *Massachusetts General Hospital* v. *State Assurance Co.* 4 Gray, 227. The damages, if any, suffered by the plaintiff may be assessed, in order to give him full relief.

*Decree accordingly.*