<hr />

WILLIAM ROBERTS *vs.* CITY OF CAMBRIDGE.

Middlesex.    December 9, 1897. — January 8, 1898.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Specific Performance — Reference to Master — Vote of Water Board of City — Construction of Contract — Decree.*

Where specific performance of a contract has been decreed, if no evidence has been offered, either at the hearing on the merits or subsequently when the case is sent to a master, of any change in the situation which would render specific performance so onerous that it ought not to be decreed, a single justice of this court may refuse to submit to the master the question of the proportion between the damage which would be suffered by the plaintiff in consequence of non-performance and that which would be suffered by the defendant in consequence of performance.

The water board of a city voted that, on a day named, "we will open the four-inch gate at the gate-house of our dam, . . . and allow thereafter a quantity of water to pass through from the reservoir above the dam to 'A.'s mills' sufficient for washing and steam purposes, to take the place of the water heretofore furnished to him by us for such purposes." The decree entered in a suit by A. against the city for specific performance of the contract contained in the vote declared the legal import of the vote to be that the defendant was bound and obliged at all times to allow to pass to the plaintiff's mills from its reservoir through the four-inch gate in the dam a quantity of water sufficient for washing and steam purposes for the mills, not exceeding the quantity which was sufficient for these purposes as the mills existed and were equipped on the day named in the vote. While the defendant's dam was building, the defendant, for the purpose of supplying the plaintiff, whose water it had taken by the right of eminent domain, with water for washing and purposes other than power, had supplied him with three hundred thousand gallons daily pumped from a river. *Held*, that the plaintiff was not limited to that amount, but that the decree had taken the correct view of the contract.

BILL IN EQUITY, filed May 12, 1894, for the specific performance of an agreement to open a four-inch gate at the gate-house of the defendant's dam at Stony Brook, and allow thereafter a quantity of water to pass through from its reservoir above the

dam to the plaintiff's mill sufficient for washing and steam purposes.

After the former decision, reported 164 Mass. 176, the case came on before *Holmes,* J., for reference to a master, and the defendant moved that an order of reference be issued in the following form:

"In the above entitled case it is hereby ordered that Alfred Hemenway, Esq. be and is hereby appointed special master to hear the evidence and report: 1. As to the amount of damages, if any, that the plaintiff may have sustained by the defendant's failure to furnish water. 2. What amount of water, if any, the defendant shall be directed to furnish the plaintiff from its reservoir. 3. What the damages will be to the defendant if it shall be compelled to supply water from its reservoir to the plaintiff. 4. What the damages will be to the plaintiff if the defendant shall not furnish water from its reservoir. 5. To find such other facts bearing upon the case, and report such evidence as either party may request."

The judge ruled that the plaintiff was entitled to specific performance of his contract, (being that set forth in 164 Mass. 176,) whatever the proportion between the damage which would be suffered by the plaintiff in consequence of non-performance, and that which would be suffered by the defendant in consequence of performance and on that ground only; and, subject to the defendant's exceptions, made an order of reference in the following form:

"In the above entitled case it is hereby ordered that Alfred Hemenway, Esq. be and is hereby appointed special master to hear the evidence and report: 1. As to the amount of damages, if any, that the plaintiff may have sustained by the defendant's failure to furnish water to the plaintiff's mill under the contract referred to in the opinion of this court since July 1, 1893. 2. To report any plan or plans to regulate the flow of water through the said gate so that the Roberts Mill, so called, may be supplied with water sufficient for washing and for steam purposes, to take the place of the water heretofore furnished to him by the defendant for such purposes. 3. To find such other facts bearing upon the motion made by the plaintiff for a decree in the premises, and report such evidence bearing upon the same as

either party may request, and to make report in thirty days unless good cause be shown for further delay."

The case was reported to the full court; and subsequently, upon the coming in of the master's report, a final decree was entered, from which the defendant appealed. The facts appear in the opinion.

*G. A. A. Pevey*, for the defendant.

*E. C. Bumpus & H. S. Milton*, for the plaintiff.

LATHROP, J. The first question which is before us upon the report of the single justice, before whom the hearing was had on sending the case to a master, is whether, as requested by the defendant, the third and fourth questions should have been answered by the master, as it is admitted that the first and second were embraced in the order made, and the fifth is not now insisted upon.

When this case was last before us, *Roberts v. Cambridge*, 164 Mass. 176, it was held that the plaintiff was entitled to specific performance of his contract with the defendant.

The defendant contends that, where events after the making of the contract make the performance by the defendant so onerous that its enforcement would impose great hardship upon him, and cause little or no benefit to the plaintiff, the court will not interfere, but will leave the plaintiff to his remedy at law. See Beach, Mod. Eq. Jur. § 569. The defendant argues that the population of the defendant city has now increased, and that to perform the contract will cause great damage to the city, and that the court should have allowed the defendant to show " what might be the proportion between the damage which would be suffered by the plaintiff in consequence of non-performance and that which would be suffered by the defendant in consequence of performance."

The votes which were held to constitute a contract were passed on December 19, 1887. Soon after this time the defendant supplied the plaintiff with water, and continued so to supply him until on or about July 1, 1893, when it refused to fulfil the contract. The bill in equity for specific performance was filed on May 12, 1894, and the case was decided on June 28, 1895. It was open to the defendant at the hearing on the merits, if there had been any change in the situation be-

tween the making of the contract and the filing of the bill which would render specific performance so onerous that it ought not to be decreed, to present evidence to this effect; but this was not done, nor was any reason given for the stoppage of the water supply to the plaintiff. Nor does it appear that there was any evidence offered to the single justice, who sent the case to the master, that there was any change in the situation between the day of the hearing on the merits and May 5, 1896, when the case was sent to the master. We are therefore of opinion that the refusal of the single justice to submit the questions presented to the master was right. It is no reason for not enforcing a contract that the defendant can make or save more money by avoiding his agreement than by carrying it out. *Lynch* v. *Union Institution for Savings*, 159 Mass. 306, 308.

The next question arises on the appeal from the final decree. While the defendant's dam was building, the defendant, for the purpose of supplying the plaintiff with water for washing and purposes other than for power, supplied him with water pumped up from the Charles River. This amount is found by the master to have been three hundred thousand gallons daily. The first vote which was passed by the defendant's water board was as follows: " Voted, That on December 19, 1887, we will open the four-inch gate at the gate-house of our dam at Stony Brook, and allow thereafter a quantity of water to pass through from the reservoir above the dam to Roberts Mills, sufficient for washing and steam purposes, to take the place of the water heretofore furnished to him by us for such purposes."

The decree declares the legal import of the vote to be that the defendant is bound and obliged at all times to allow to pass to the plaintiff's mills from its reservoir through the four-inch gate in the dam a quantity of water sufficient for washing and steam purposes for said mills, not exceeding, however, the quantity which was sufficient for these purposes as the mills existed and were equipped on December 19, 1887.

The contention of the defendant is that the amount of the water should be limited by the decree to three hundred thousand gallons, which was the amount furnished by the defendant before December 19, 1887. We are of opinion, however, that the decree has taken the correct view of the contract. The control-

ling factor is that there must be sufficient water for the purposes named. This of course is to be limited to the mills as then equipped, or an equivalent in amount if the equipment should be changed. The words " to take the place of the water heretofore furnished to him by us for such purposes " were probably added to prevent the claim that the amount to be furnished from the dam was to be in addition to that theretofore pumped from the Charles River. While the mills may have been so run as not to require more than three hundred thousand gallons a day in 1887, it does not follow that the entire equipment did not then require more. We do not construe the last clause of the first vote as limiting the meaning of the word " sufficient." It may be added that the defendant, from soon after December 19, 1887, until July 1, 1893, supplied water to the plaintiff, in accordance with the construction of the contract which the decree sets forth.            *Decree affirmed.*