REVERE WATER COMPANY *vs.* INHABITANTS OF WINTHROP.
INHABITANTS OF WINTHROP *vs.* REVERE WATER
COMPANY & others.

Suffolk. March 28, 29, 1906. — June 21, 1906.

Present: KNOWLTON, C. J., MORTON, LATHROP, BRALEY, & SHELDON, JJ.

*Municipal Corporations. Conspiracy. Fraud. Waterworks. Equity Jurisdiction,* To remove cloud on title, Specific performance. *Statute. Constitutional Law. Contract. Revere Water Company. Winthrop. Words,* "Ratified."

Where the selectmen of a town called a town meeting to act on a proposition to purchase the plant of a water company at a certain price and before the meeting but after they had issued the warrant for the meeting voted to purchase the plant at the price named, but they had not stated in the warrant for the meeting their intended vote to purchase the plant and did not disclose their vote to the community before the meeting, this failure to give the information, although it may have been ill advised and an error of judgment, is not evidence of corruption to support a charge of conspiracy unless there is proof to connect it with fraudulent conduct or an unlawful purpose.

Under R. L. c. 25, § 31, a vote of a town to purchase the plant and privileges of a water company for the purpose of supplying its inhabitants with water is of no effect unless preceded by a vote of the selectmen authorizing the purchase.

Under R. L. c. 25, § 31, a vote by a majority of the voters of a town can have no effect in ratifying a vote of its selectmen to purchase the plant and privileges of a water company for the purpose of supplying the inhabitants of the town with water unless the selectmen voted to make the purchase before the warrant for the meeting was issued and their action was stated in the warrant.

Where a vote of a town to purchase the plant and privileges of a water company for the purpose of supplying the inhabitants of the town with water is void under R. L. c. 25, § 31, because when the warrant for the meeting at which the vote was passed was issued the selectmen of the town had not voted to make the purchase and no action on their part was stated in the warrant, if thereafter the water company gives notice of its acceptance of the vote passed at the meeting, and a deed is delivered in pursuance of the vote and a semblance of taking possession of the works by the town occurs, these acts impose no obligation on the town to accept or pay for the works under the terms of the vote, especially where the town by another vote less than three months later expressly rejects the attempted purchase; and, if the deed has been recorded and the town has acquired a right to the conveyance of the plant and privileges under an agreement made according to a subsequent statute, it is entitled in equity to a decree of cancellation to remove the cloud upon its title.

St. 1882, c. 142, incorporating the Revere Water Company and St. 1884, c. 259, authorizing it to supply the town of Winthrop with water, which were enacted subject to Pub. Sts. c. 105, § 3, gave to that corporation no vested rights inconsistent with a subsequent grant by the Legislature to the town of Winthrop to

construct, operate and maintain a water supply system and furnish itself and its inhabitants with water.

St. 1905, c. 477, § 12, gave the Revere Water Company, which was incorporated by St. 1882, c. 142, and was authorized by St. 1884, c. 259, to supply the town of Winthrop with water, the right, on a notice within thirty days of the acceptance of the act by that town, to sell to the town all its property therein used for supplying the town or its inhabitants with water at a fair value to be ascertained as provided in § 13 of the act, authorized such purchase by the town to be voted for at a town meeting, and provided that the town should not construct a distributing system for supplying water to its inhabitants under the authority of the act unless it first should have purchased the property which the company had notified the town that it desired to sell, and provided further that in case the company failed to perform all the terms set forth in the section, the town might proceed to construct, operate and maintain a water supply system and furnish itself and its inhabitants with water under the terms of the act. *Held,* that the statute was not an appropriation of private property for a public use without due process of law under the fourteenth amendment of the Constitution of the United States.

St. 1905, c. 477, § 12, gave the Revere Water Company, which was authorized to supply the town of Winthrop and its inhabitants with water, the right on a notice within thirty days of the acceptance of the act by that town to sell to the town all its property therein at a fair value to be ascertained as provided in § 13 of the act, authorized such purchase by the town to be voted for by ballot at a special or an annual town meeting, and provided that if the town should vote to purchase the property after notice given by the company, the company should within thirty days after the vote execute and deliver to the town proper deeds and writings conveying the property to the town. . The town accepted the act, and the company within thirty days thereafter gave the notice of its desire to sell its property to the town. At a meeting held about two months after its acceptance of the act the town rejected the company's offer to sell the property, but two months later at another meeting voted to accept the offer and purchase the property. The company failed to deliver a deed of the property either within thirty days of the last named vote or at any time thereafter. The town brought a suit in equity against the company to compel the specific performance of the contract under the statute by a conveyance of the property. *Held,* that a contract of sale existed under the terms of the statute; that the rejection of the company's offer at the first town meeting after it was made did not exhaust the right of the town to vote upon the proposition of purchase, and that the vote of acceptance at the second meeting was within a reasonable time ; that the failure to deliver a deed within thirty days after the vote, to purchase, as required by the statute, did not lessen the obligation of the company to deliver such a deed after the thirty days had expired, and that the town was entitled to a decree for the specific performance of the contract.

Two BILLS IN EQUITY, one filed on November 20, 1905, by the Revere Water Company, incorporated under St. 1882, c. 142, and authorized by St. 1884, c. 259, to supply the town of Winthrop with water, against that town to compel the specific enforcement of an alleged contract to buy the plant and privileges

of the plaintiff in Winthrop for the sum of $250,000, and to enjoin the town of Winthrop from purchasing the plant and privileges under St. 1905, c. 477, § 12, on the ground that the provisions of that section are unconstitutional; and the other, filed as amended on January 18, 1906, by the inhabitants of the town of Winthrop against the Revere Water Company and certain individual defendants, praying for the cancellation of a deed of November 20, 1905, recorded in the registry of deeds but alleged not to have been accepted by the plaintiff and to be void, which attempted to carry out the contract, set forth by the water company in its bill, for the sale of its plant and privileges to the town for $250,000; and praying also for a sale and conveyance of the property in question to the town under St. 1905, c. 477, § 12, or in the alternative for a sale to the town under a previous contract of July 22, 1884; for the appointment of a receiver; for injunctions against the individual defendants and an order that they pay the costs of suit; and for further relief.

The first bill was filed in the Superior Court and afterwards was removed from that court and entered in the Supreme Judicial Court. The second bill was filed in the Supreme Judicial Court. By an order of court the cases were consolidated and were heard together by *Braley*, J., who made certain findings of fact and a memorandum of decision. He made a decree dismissing the second bill as to all the individual defendants and allowing them severally their taxable costs. The town appealed from the decree. At the request of the parties the justice reserved the cases upon the pleadings, the evidence and the findings of fact so far as applicable for determination by the full court, such decree to be entered as the full court might determine.

*C. F. Choate, Jr.*, (*J. D. Colt* with him,) for the town of Winthrop.

*J. R. Dunbar*, for the individual defendants.

*A. E. Pillsbury*, (*G. M. Palmer* with him,) for the Revere Water Company.

BRALEY, J. The town having considered it advisable to join as defendants several of its citizens, who when acting as members either of a municipal committee or of its boards of selectmen participated in the negotiations, legislative proceedings and

an alleged contract of sale, all of which related to the acquisition by purchase of the company's water plant, their liability should be determined first. They severally as public officers are charged with an abuse of their trust by entering into a conspiracy with the manager of the company to foist this plant upon the town at a price greatly in excess of its intrinsic value. If thereby pecuniary loss resulted, such conduct, if proved, would render them liable in damages, or to the costs of any litigation in which the town became involved by their corrupt action, as they were bound to act in good faith for the interest of their principal, and to buy at the lowest price for which the property could be purchased. *Boston* v. *Simmons*, 150 Mass. 461. *Alvord* v. *Cook*, 174 Mass. 120, 127. *Emmons* v. *Alvord*, 177 Mass. 466. *Byrne* v. *Norcott*, 13 Beav. 336, 346. Notwithstanding the redundant verbal setting found in the bill, to sustain this charge the evidence must show a corrupt combination either to do an unlawful act or to accomplish a lawful act by unlawful means. *O'Callaghan* v. *Cronan*, 121 Mass. 114, 115. A full examination of the testimony, while it reveals the existence of a great diversity of opinion among the citizens, who finally became divided into two factions, one favoring the purchase at the price fixed by an hydraulic expert employed by the committee and the other opposing such purchase, with the consequent engendering of much dissension and partisan bitterness, fails to establish a conspiracy, or even dishonest individual conduct. Beyond possible errors of judgment accompanied by a strong bias leading them to support the advisability of their own action in making the preliminary agreement with the company's manager, the defendants appear to have acted in this part of the transaction as well as throughout the subsequent proceedings with fidelity and for what they considered the welfare of the town. When malfeasance by a public officer is charged, motive may become an important element, and, while pecuniary gain need not be shown, it is significant that the evidence does not disclose any advantage by way of office or of public or private emolument that any of these defendants might have hoped to receive in taking the course they are shown to have pursued. But even if their final action, when those in office sat as a board of selectmen, in not publishing to the community or stating in the warrant their

vote to buy the plant before the qualified inhabitants were called upon by them in town meeting to pass upon this proposition, in the form submitted, may be open to criticism, yet, if at a later date in the opinion of a majority of the voters the purchase was ill advised, such an error of judgment of itself is not dishonesty nor evidence of corruption without proof of connecting fraudulent conduct or of an unlawful purpose, neither of which is found. In an inquiry involving personal motives and integrity, and where nearly the whole of the oral testimony is given by the implicated officials, as in the present case, much depends upon the appearance of witnesses, the manner in which they give their evidence and their apparent credibility; and these characteristics the printed record, however full, cannot reproduce. From our examination of the evidence, which has been fully reported, we find no substantial reason leading us to doubt the correctness of the result reached by the decree of the county court, which fully exonerated these defendants from all incriminating allegations. *Skehill* v. *Abbott*, 184 Mass. 145.

In whatever form they may be stated by the averments of the parties in their several pleadings, when freed from this entanglement of fraud and conspiracy, there remain two important questions upon the decision of which the rights of the company and the town depend. They are, whether the company is to be granted specific performance of an alleged contract of sale of the plant, or whether the town is to acquire it by purchase under the provisions of St. 1905, c. 477. Before taking them up, the validity of an earlier contract of which the town asks specific performance must be decided, for if this is enforceable these questions become immaterial. This contract with the company was executed on July 22, 1884, and gave the option of buying the waterworks with all connected privileges at a price which was to be fixed by appraisers who either were to be selected by the parties or appointed by this court, and nearly twenty years afterwards on July 14, 1904, the town voted to make the purchase. But at the date of the contract, Pub. Sts. c. 27, § 27, and at the date of the vote, R. L. c. 25, § 31, provided that a town could not buy without the consent of a majority of its selectmen. To constitute such assent affirmative action by them as a board of public officers is required, and is

not to be implied from the recitals found in the last clause of this contract, that they were authorized to execute it in behalf of the town and the evidence is conclusive that the board in existence when the vote was passed declined to assent. *Attorney General* v. *Eastern Railroad*, 137 Mass. 45, 49. See *Murdough* v. *Revere*, 165 Mass. 109. This precedent condition not having been complied with, even if the contract in other particulars was one which the town could make, the vote was a nullity, and not only was the title of the company left unclouded, but no foundation had been laid upon which a bill in equity can now be maintained to compel specific performance. *Smith* v. *Dedham*, 144 Mass. 177. It therefore becomes unimportant to consider other serious objections which would have to be removed before such relief could be granted, and the result is that the town and the company were left unhampered from entering into subsequent negotiations. Assuming, without further discussion, that the appointment of a committee for this purpose on February 25, 1904, and their conduct in the ensuing negotiations was within the scope of their authority, and that the vote to buy passed by the selectmen on March 13, 1905, was such official action by them as to be a full compliance with the requirements of R. L. c. 25, § 31, we come directly to the point on which this part of the controversy turns.

At some period of time the statute requires that a majority of the voters of the town which is to purchase shall act upon the subject either by ratifying or rejecting a proposed contract of sale. The question now presented is to be distinguished from cases where under acts incorporating water supply companies a condition often is inserted that the town which is to be supplied may buy upon certain terms, or where subsequent legislative permission is given to the municipality to erect and maintain a competing water system, unless the water company already established elects to sell, as in *Braintree Water Supply Co.* v. *Braintree*, 146 Mass. 482; *Rockport Water Co.* v. *Rockport*, 161 Mass. 279; *West Springfield* v. *Springfield Aqueduct Co.* 167 Mass. 128; *Newburyport Water Co.* v. *Newburyport*, 168 Mass. 541; and *Gloucester Water Supply Co.* v. *Gloucester*, 179 Mass. 365. The general law, however, is framed for the purpose of enabling towns to buy in the market if a bargain can be

made, and, instead of commissioners being appointed to estimate values and fix a price which is the usual method provided by special legislative acts, the selectmen are given authority to act ·in behalf of the town, and to attend to any preliminary details, and when they have reached a conclusion to report to the town, which then decides whether a contract shall be perfected by its sanction. Ordinarily a board of selectmen would not enter upon such inquiries or make an inchoate agreement to buy unless directed by the municipality, but this precaution of administration does not limit their statutory power, although its exercise well may be made by them to depend upon the will previously expressed of a majority of the voters. The language of the original act, which is St. 1870, c. 93, required the " consent " of a majority of the selectmen " sanctioned and ratified by a majority of the voters " of the town, but this phraseology does not differ in meaning from the language of the last revision. *Reynolds* v. *New Salem*, 6 Met. 340, 343. Under either, the provisions of the proposed contract may be first determined by the selectmen upon conference with the company, which must be presumed, however, to act with full knowledge of the statutory limitation. *Dill* v. *Wareham*, 7 Met. 438. *Wormstead* v. *Lynn*, 184 Mass. 425, 428. But after this has been accomplished a contract of sale does not become binding or enforceable until ratified by a majority of the voters, and when this is done thereafter the contracting parties become respectively the water company and the town. In the prolonged consideration of the whole subject that ensued at numerous town meetings and elsewhere, after the committee had been appointed, it is plain from the evidence that the voters generally had become fully acquainted with all of the important phases of the proceedings, yet, as they were not charged with ·constructive notice from the record kept by the selectmen, apparently they had not been informed before March 16, 1905, that the board finally had decided to take the works at a price agreed upon between them and the company. *Commonwealth* v. *McGarry*, 135 Mass. 553, 554. But whatever outside information they may have possessed, and from whomsoever derived, the warrant for the town meeting was the only authorized source to which the voters could look to ascertain what subjects

were presented for their decision, and no valid action could be taken unless there was a specific article covering the subject matter. *Grover* v. *Pembroke,* 11 Allen, 88. *Sherman* v. *Torrey,* 99 Mass. 472. *Whitney* v. *Stow,* 111 Mass. 368. *Reed* v. *Acton,* 117 Mass. 384. *Woodlawn Cemetery* v. *Everett,* 118 Mass. 354, 362. *Locke* v. *Lexington,* 122 Mass. 290. *Bloomfield* v. *Charter Oak Bank,* 121 U. S. 121, 129. While the warrant is not to be construed with technical strictness and intelligible notice is all that is required, yet an article which presents only the general proposition whether a purchase shall be made, but action upon which does not commit the town to buy, is legally distinct from a proposition of ratification which if carried does bind the town. The one presents for consideration a question of initiative public policy, while the other upon being duly voted by the town and accepted by the company creates a contract which cannot be revoked without the assent of both. *Braintree Water Supply Co.* v. *Braintree, ubi supra.* The word " ratified " as used in the statute plainly means that when the selectmen issue the warrant they are supposed to have taken appropriate precedent action, otherwise there is no proposal of purchase in existence which can be made the subject of ratification, and which by the ratifying act thereupon becomes an existing contract. *Locke* v. *'Lexington, ubi supra.* See *New England Dredging Co.* v. *Rockport Granite Co.* 149 Mass. 381, 382. The cases of *Harrington* v. *Harrington,* 1 Met. 404, 407, and *Geer* v. *Fleming,* 110 Mass. 39, on which the company relies to sustain its contention that it was neither necessary for the selectmen to act before the warrant issued, nor for the warrant to state that they had acted, relate to the laying out of town ways. In the performance, of this function under R. L. c. 48, § 71, the selectmen act as public officers, and not as agents of the town, and as the way must be laid out, and the report filed seven days before the town meeting at which it is to be accepted, this action need not necessarily be taken before the warrant issues, but if not done within the statutory time, the warrant is rendered nugatory. But even then an article must be inserted sufficiently definite to notify the inhabitants that they may be called upon to act upon the subject. *Jones* v. *Andover,* 9 Pick. 146. Both of these irremediable defects are

found, for when on March 7, 1905, the warrant for the meeting of March 16, 1905, was issued, the selectmen neither had acted, nor did the warrant contain an article which under the most liberal interpretation conveyed any notice to the voter that by his vote he was irrevocably committing the town to take over the property under a proposed contract of purchase which previously had been negotiated and accepted by the board of selectmen.*   Because of this failure of the selectmen to act before they issued the warrant, as well as its insufficiency, original authority was wanting, as the town could not act except as authorized by statute.  R. L. c. 11, § 328.  *Parsons* v. *Goshen*, 11 Pick. 396.   *Smith* v. *Stoughton*, 185 Mass. 329.   Conse. quently the notice by the company of the acceptance of the vote passed at this meeting, the delivery of the deed, its acceptance and recording by the selectmen, even if followed by them with a semblance of taking possession of the works, neither conveyed title to the town, nor imposed upon it any obligation to pay the

---

* The article of the warrant referring to the purchase was as follows:

"ART. 2.  To see what action the town will take in regard to the purchase of any property of the Revere Water Company by voting upon the following questions :

"(1) Shall the town purchase the property of the Revere Water Company within the limits of Winthrop at the price named by Engineer Kimball, namely $250,000 ?

"(2) Shall the town approve the purchase of the property of the Revere Water Company situated within the limits of Winthrop at the price of $250,000, and authorize the Selectmen to consummate the purchase and incur any proper expenses including counsel fees in connection therewith ?

"Also to vote upon the following question : Shall the committee appointed by the town on February 25, 1904, consisting of Winthrop Magee, A. C. J. Pope and John R. Neal, be instructed to procure such legislation as may be proper to enable the town to establish a system of water supply, and authorized to incur any proper expenses including counsel fees in connection therewith ?"

The warrant was issued on March 7, 1905.  On March 13, 1905, the selectmen voted, "To accept the proposal of the Revere Water Company of April 25, 1904, to sell its property in Winthrop, to this town, and to purchase such property at the price fixed by Engineer Kimball, to wit: Two hundred and fifty thousand dollars ($250,000) provided the Town shall ratify this action in Town Meeting as required by law."

On March 16, 1905, the town meeting was held, and each of the questions in the warrant quoted above was answered in the affirmative by a majority of the voters present and voting.

stipulated consideration. *Meigs* v. *Dexter,* 172 Mass. 217, 218. If upon the entire evidence there is open any question of law either of ratification or of estoppel by conduct, which we do not intimate, it is effectually disposed of by the vote passed June 8, 1905, whereby the town not only refused to ratify the action of the selectmen taken March 13, 1905, but also specifically rejected the attempted purchase. While the company, therefore, must fail in its effort to have this deed declared to be a valid conveyance, and the town decreed to make payment of the amount for which it claims the property was sold, yet, as the recording of this instrument may have the effect of clouding any title which the town lawfully can obtain under the St. of 1905, c. 477, § 12, it is entitled to a decree of cancellation. *Rogers* v. *Nichols,* 186 Mass. 440. *Sawyer* v. *Cook,* 188 Mass. 163.

If no title vested, the questions raised by the supplemental amendments to the company's bill become immaterial, and the validity of St. 1905, c. 477, must be next considered. The company contends that the act is unconstitutional, while the town asks that in compliance with its provisions the company should be decreed to convey the property treated as an equipped system of supply. This act was passed to enable the town to supply its inhabitants with water, and whether the public interests would be served by conferring such authority was for the Legislature to determine. *Agawam* v. *Hampden,* 130 Mass. 528, 530. It is manifest that, if an independent system might be thus established, the defendant's property probably would be diminished in value, and its business perhaps destroyed by reason of the competition, but the company under the St. of 1882, c. 142, by which it was incorporated, enjoyed no vested rights which gave it immunity from this contingency, or rendered such legislative action unconstitutional. Pub. Sts. c. 105, § 3. *Commissioners on Inland Fisheries* v. *Holyoke Water Power Co.* 104 Mass. 446, 451. *Newburyport Water Co.* v. *Newburyport,* 168 Mass. 541. *Gloucester Water Supply Co.* v. *Gloucester,* 179 Mass. 365. Nor is legislation of this nature an appropriation of private property for a public use without due process of law under the fourteenth amendment of the federal Constitution. *Newburyport Water Co.* v. *Newburyport,* 193 U. S. 561. *Gloucester*

*Water Supply Co.* v. *Gloucester*, 193 U. S. 580.  If §§ 12 and 13 are eliminated, the act simply authorizes the erection and maintenance of an independent water system, and these sections are not made mandatory.  By § 12 the company was left unrestricted in choice, for it either could continue in business and take any risk of pecuniary loss, or could sell to the town which was required to purchase under certain conditions, which only could come into potential existence upon the initiative of the company.  *Braintree Water Supply Co.* v. *Braintree*, 146 Mass. 482, 487.  Of course it can be said that, in whatever guise the question may be put as to this freedom of choice, there was nothing else the company eventually could do but sell, as the territory and patronage were too limited to afford a reasonable probability that two independent water systems could be supported, or that the town in reality never intended to build but only to acquire the company's plant.  But the very terms of these sections contemplate that the company may choose to sell, and, if it does, then the town must purchase at a valuation which if not fixed by agreement must be determined by commissioners.  St. 1905, c. 477, §§ 12, 13.  *Newburyport Water Co.* v. *Newburyport, ubi supra.*  If the privilege of taking water under the metropolitan water system within the territory of which the town of Winthrop is situated could not be exercised unless the town first acquired the works of any water company within its limits, this furnishes no argument against the validity of the statute, which makes express provision for the accomplishment of this purpose by the acquisition of the company's works if it decides to sell.  See Sts. 1895, c. 488, § 3; 1898, c. 392, and 1899, c. 349.

The statute being found constitutional, the town contends that a valid contract having been made according to its provisions, which the company has failed to perform, specific performance should be decreed.  It therefore becomes essential to determine whether such a contract exists.  After the act was accepted by the town on July 19, 1905, the company under § 12, without waiving either its claim as to the validity of the prior sale or its contention that the statute was unconstitutional, notified the selectmen of its desire to sell.  By this action it took the position that, if the questions within the protest were

decided adversely, then the offer was an unqualified proposal of sale which it must make unless it elected to continue in business, and which the town by force of the statute was equally bound to accept. While acceptance under the statute is neither limited in time, nor to any number of town meetings, yet the town undoubtedly was obliged to act within a reasonable time after the offer had been made, and as the rejection at the town meeting held on September 25, 1905, did not exhaust the right of the town again to vote upon the proposition of purchase, so the second town meeting held on November 23, 1905, at which the town voted to buy was within a reasonable period. Under the statute the company was required within thirty days to complete the transaction by conveying its property unincumbered by a good and sufficient deed. The action of the company in electing to sell upon the statutory terms must be treated as voluntary, for it could have gone on leaving the town to establish its own system, but the offer having been duly accepted the town is prohibited by § 12 from taking such action. At this point the next necessary step is the passing of title by the company, which has not been done, but there are no provisions found in the statute which prevent a conveyance being executed and delivered after the thirty days have expired, which may be taken as only prescribing for this purpose a minimum limit of time. It is assumed by the statute that the company's property as a whole is of such a character that it should be conveyed by deed, and if, having been granted general authority to make and receive such a conveyance, an agreement in writing had been executed by the parties as between vendor and purchaser, which embodied similar terms of sale, a court of equity in its discretion could decree specific performance on a bill brought by either of them. *Old Colony Railroad* v. *Evans*, 6 Gray, 25, 30. *Thaxter* v. *Sprague*, 159 Mass. 397. The doctrine that where a party can be fully compensated by damages he may be remitted to his suit at law has no application, for if equitable relief is denied there is no other adequate mode of redress. *Roberts* v. *Cambridge*, 164 Mass. 176, 181; *S. C.* 170 Mass. 199. See *Jones* v. *Newhall*, 115 Mass. 244, 248. The rights respectively to sell and to buy in the manner prescribed are specifically conferred by the statute, for otherwise R. L. c. 25, § 31, would have to be followed, or

further special legislation obtained.   Because the company has elected to sell, the town cannot proceed to build, and the delay and uncertainty caused from litigation in various forms to ascertain the respective rights of the parties would be deemed sufficient to relieve the company from the forfeiture found in the last sentence of § 12, or it may be said that the town by bringing its bill has waived this provision.   To deny appropriate relief would enable the company to take advantage of a refusal to perform after its reasons for non-performance are shown to be untenable, and also when performance only became obligatory and essential by reason of its initiatory step.   The elements of compensation under § 13 are not to be determined or the amount estimated until the title passes, and if the board of water commissioners and the company agree upon the price, and this is satisfactory to the town, no further consideration of either will be required, but if they disagree, or the town rejects their agreement, resort may be had to this court, and until thus presented, any consideration of the important questions which then may arise would be premature.

The bill of the company must be dismissed, but, as a receiver has been appointed who has administered the property during the litigation, the terms of the decree must be settled before a single justice.   A decree for the cancellation of the deed, and for specific performance of the contract made under St. 1905, c. 477, § 12, is to be entered in favor of the town, although as to the individual defendants the decree from which it took an appeal is affirmed with costs.

*So ordered.*