BRAINTREE WATER SUPPLY COMPANY *vs.* INHABITANTS OF BRAINTREE.

Norfolk.    January 23, 24, 1888. — April 6, 1888.

Present: MORTON, C. J., W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Corporation — Water Company — Contract — Rescission — Commissioners.*

The St. of 1886, c. 269, chartered a water company, and in § 10 authorized it to sell its franchise and property, and a town to purchase them by a two-thirds vote at a meeting called for that purpose, and provided for the appointment of commissioners to fix the price in case of disagreement.   At such a meeting, under an article in the warrant "to see if the town will vote to purchase the same," the requisite vote was in the affirmative, but at a subsequent meeting the vote was rescinded.   *Held,* that the vote to purchase completed a contract, from which the town could not withdraw.

The water company, which organized without observing the Pub. Sts. c. 105, § 9, as to notice, before its capital was paid in or entirely subscribed for, made a price to the town after its vote to purchase through a town committee, and, upon no action being taken thereon, filed a petition for the appointment of commissioners.   *Held,* that the company must be taken to be legally organized, and that the petition was properly brought in its corporate name.

PETITION praying for the appointment of commissioners under the St. of 1886, c. 269, § 10, to determine the price to be paid by the respondent for the franchise and property of the petitioner, alleging that the parties were unable to agree on such compensation.   Hearing before *Field,* J., who dismissed the petition and reported the case for the consideration of the full court, upon an agreed statement of facts, in substance as follows.

The records of the petitioner showed that, pursuant to the call of one of the incorporators named in the St. of 1886, c. 269, § 6, a meeting was held on June 9, 1886, for the purpose of organization, when four out of the six persons named in the statute were present.   A temporary chairman and temporary clerk were chosen, also a board of directors, and a president.   A clerk was also chosen and sworn.   There was no other evidence of the notice of this meeting, or that the temporary clerk was elected by ballot, or sworn.   The records further showed, that the second meeting was held on September 15, 1886, at which the written resignations of two directors were received, and others were chosen in

their places.   It was voted that a tract of land be taken for the purposes named in the statute, and that the taking be recorded in the registry of deeds, which was subsequently done; that the capital stock be fixed at $100,000, and that books be opened for subscriptions; and " that the corporation authorize the directors to contract for the complete construction of the works of the company, and to pay therefor by the issue of stock and bonds not exceeding the full amount authorized by the charter, and do hereby authorize the issue of bonds bearing interest at a rate not exceeding six per cent per annum, the same to be secured by a mortgage on the franchises and other property of the corporation, to an amount not exceeding its capital stock actually paid in, and the directors are hereby authorized to execute said mortgage and to issue said bonds, and to take such other action as may be necessary for the full carrying out of this vote."

Eight persons subscribed, under date of September 20, 1886, for one share each, but no certificates of stock were ever issued thereon, and no payments were ever made on account of the subscriptions.

On October 18, 1886, an adjourned meeting was held, at which it was voted to contract with Wheeler and Parks, contractors, for the construction of the works, and on October 19, 1886, the petitioner entered into a contract with them, by which the franchise and other property was to be mortgaged to secure an issue of bonds, to be delivered to them, and all the bonds and stock less the subscriptions which could be issued under its charter were to be turned over to them in payment for the building of the works.

A meeting of the respondent town was held on January 12, 1887, in pursuance of a warrant containing the following: "Article 3d.   To see if the town will vote to purchase the franchise, corporate property, and all the rights and privileges of the Braintree Water Supply Company, according to the provisions of section ten of chapter two hundred and sixty-nine of the Acts and Resolves of the Legislature of the Commonwealth of Massachusetts of the year 1886, and to appoint any committee which it may deem expedient in relation thereto." It was voted " that the town proceed to ballot — yes or no — by·

the use of the check list, on the third article of the warrant." Tellers were appointed by the moderator to check the list, and were sworn by the town clerk. The ballot having been taken, the moderator announced the result as follows: Whole number of ballots, 313. Yeas, 256; noes, 57. Necessary for its adoption, 209; being two thirds of the whole number of ballots cast. The moderator then declared the motion adopted. The meeting was then adjourned to January 25, 1887, when it was further voted that a committee be chosen to "negotiate on behalf of the town with the duly authorized officers of the Braintree Water Supply Company, for the purpose of ascertaining what price or compensation shall be paid by the town for the franchise, corporate property, and other rights and privileges of said corporation; that this committee be and hereby is instructed to examine all records, votes, books of account, and vouchers, relating to the formation and business affairs of said corporation; to examine all contracts entered into by said corporation, to report at a town meeting to be called for the purpose of hearing said report and acting thereon; to cause said report to be printed and circulated throughout the town three days at least before the day of the holding of said meeting, and to do such other things as may be necessary in the premises"; and a committee of five was appointed.

This committee met the directors of the petitioner on February 5, 1887, at which time the president said that the company was not in the market for sale; that the directors did not wish to sell, but they recognized the right of the town to purchase under the statutes; that the meeting was somewhat preliminary; and that the company at an early date would submit to the committee a proposition in writing. On February 9, 1887, the proposition was submitted to the committee by the president, which, after reciting the making of the contract with Wheeler and Parks, stated that the petitioner "will sell to the town of Braintree, for the sum of twenty-three thousand dollars ($23,000) our franchise, corporate rights and privileges, together with all the rights and interests in any contract which we now have for supplying water to persons or corporations, and will assign all our rights in the contract for the building of the works, provided that the contractors assent to the same."

A few days after this proposition was received, a sub-committee visited the office of the company, and an opportunity was there given them to examine the records, contracts, and other papers of the company, which was availed of.  The next town meeting was held on February 23, 1887, at which the report of the committee, which had been previously printed and circulated throughout the town, was read, and immediately laid upon the table, without any further action whatsoever upon it.

The next meeting of the town was held on March 10, 1887, at which it was duly voted " to rescind its vote passed January 12, 1887, to purchase the franchise, corporate property, and all the rights and privileges of the Braintree Water Supply Company, according to the provisions of section 10 of chapter 269 of the Acts and Resolves of the Legislature of the Commonwealth of Massachusetts of the year 1886."

*R. M. Morse, Jr., & M. Morton, Jr.*, for the petitioner.

*B. F. Butler & E. Avery*, for the respondent.

KNOWLTON, J.  By the St. of 1886, c. 269, the Braintree Water Supply Company was incorporated, for the purpose of furnishing the inhabitants of the town of Braintree with water. The act of incorporation conferred upon the company extensive powers, and also secured to the town the right to obtain the property and franchise of the corporation, and to control the business of supplying its inhabitants with water, whenever it should choose so to do.  Section 10 of this act is as follows: " The said town of Braintree shall have the right, at any time during the continuance of the charter hereby granted, to purchase the franchise, corporate property, and all the rights and privileges of said corporation, at a price which may be mutually agreed upon between said corporation and the said town ; and the said corporation is authorized to make sale of the same to said town.  In case said corporation and said town are unable to agree, then the compensation to be paid shall be determined by three commissioners, to be appointed by the Supreme Judicial Court, upon application of either party and notice to the other, whose award, when accepted by said court, shall be binding upon all parties.  This authority to purchase said franchise and property is granted on condition that the same is assented to by said town by a two-thirds vote of the voters present and

voting thereon at a meeting called for that purpose." The fundamental question in the case is, What were the rights and obligations of the respective parties under this section?

An important part of the chapter relates to the powers and duties of the town in managing the business of furnishing water in case it should purchase the property and franchise of the petitioner, and the intention of the Legislature to give the town the right to take this business in charge is manifest.

The authority conferred was not the power to take property by an exercise of the right of eminent domain, but it was somewhat analogous to it. It was an authority to the town to determine absolutely by its own act in the form of a two-thirds vote, at any time during the continuance of the charter, that the petitioner's property and franchise should become its own. The statute calls it a right to purchase, and seems to contemplate a transfer of title in the form of a sale, and the execution of some proper instrument as evidence of the transfer. For if the town should vote to purchase after the petitioner's works had been constructed, there might be a great variety of property, real and personal, to be transferred, and no way is pointed out in which the town could obtain and preserve in convenient form the evidence of its title except through an instrument of sale. But as a preliminary to fixing the rights of both parties, of one to have the franchise and property, and the other to have the pay for it, no writing and no negotiation was required, — nothing but the vote of the town declaring its determination.

The Legislature conferred upon the company the corporate franchise, with a condition annexed in favor of the town. By accepting its charter, the corporation impliedly agreed to sell, whenever the town by vote should decide to buy. The legal relation of the parties was as if the corporation had made in writing a continuing offer to sell, at a price to be subsequently agreed upon by the parties, and in default of agreement to be fixed by commissioners. The vote of the town to buy was an acceptance of the offer, which completed the contract. The rights of the parties were then the same as if both had signed an executory contract, binding one to sell and the other to buy, at a price to be agreed between them, or determined under the statute. Neither party could then defeat the right of the other

to have the contract executed. By the terms of the statute, it was to be specifically performed.

The town might, if it had chosen, have declined to avail itself of the offer, held out to it under this statute, to purchase at a price to be afterwards fixed, and have voted, under the authority of the Pub. Sts. c. 27, § 27, and perhaps of this statute also, to negotiate with the corporation in reference to making a purchase at a price to which both should agree. But the vote taken at the meeting of January 12, 1887, was not to make a purchase if a satisfactory price could be agreed upon. It was plainly an exercise of the town's legal right to buy, at a price to be subsequently fixed. The article in the warrant under which the ballot was taken was carefully drawn, with express reference to the provisions of the section which we have quoted. The committee appointed on January 25, 1887, was, in the language of the vote, "for the purpose of ascertaining what price or compensation shall be paid by the town for the franchise, corporate property, and other rights and privileges of said corporation." The town's original action was correctly interpreted by the town itself, when it voted at a subsequent meeting " to rescind its vote passed January 12, 1887, to purchase the franchise, corporate property, and all the rights and privileges of the Braintree Water Supply Company, according to the provisions of section 10 of chapter 269 " of the statute of 1886. And this action gave the petitioner rights which the subsequent rescission of the vote could not take away. *Nelson* v. *Milford*, 7 Pick. 18. *Woodbridge* v. *Cambridge*, 114 Mass. 483. *Hall* v. *Holden*, 116 Mass. 172.

It is argued that the petitioner entered into a contract with Wheeler and Parks, which prevented the vote from taking effect. But this argument is not well founded. The corporation might go on under its charter, and make any proper contracts for the construction of its works, and for conducting its business. No contract that it might make could deprive the town of the right to purchase its property and franchise under the statute, or prevent the appointment of commissioners to determine the price to be paid. Any contract in terms inconsistent with the exercise of that right would be contrary to the statute, and void as against the town. Any contract properly made in carrying on

its business would be binding upon it. Section nine of its charter authorized a mortgage of its franchise and property under certain limitations, but it does not appear that the mortgage mentioned in the vote of September 15, 1886, and stipulated for in the contract of October 30, 1886, was ever made.

The respondent contends that the corporation was never so organized as to be capable of selling its franchise or property, or of maintaining this petition. It must be remembered that this is a corporation created by a charter, and that neither payment for its capital stock, nor even subscription for all of it by individuals, was a necessary preliminary to organization, or to the transaction of business by it. The provisions of the Pub. Sts. c. 105, § 9, in relation to organization, are merely directory, and are intended to secure to all members of a corporation their right to participate in its proceedings. If all the members consent to an organization which disregards the statute requirements as to notice, the organization is valid. *Newcomb* v. *Reed*, 12 Allen, 362. *Walworth* v. *Brackett*, 98 Mass. 98. The proof of the act of incorporation, of the action under it, and of the dealings of the respondent with the petitioner as such corporation, is presumptive evidence that the corporation was legally organized, and is sufficient for the maintenance of a petition in the corporate name. *Narragansett Bank* v. *Atlantic Silk Co.* 3 Met. 282. *Middlesex Husbandmen* v. *Davis*, 3 Met. 133. *Worcester Medical Institution* v. *Harding*, 11 Cush. 285. *Appleton Ins. Co.* v. *Jesser*, 5 Allen, 446. *Topping* v. *Bickford*, 4 Allen, 120. *Hawes* v. *Anglo-Saxon Petroleum Co.* 101 Mass. 385.

The neglect of the town to act upon the report of its committee containing the offer of the petitioner, shows that the parties were unable to agree upon the compensation to be paid. Indeed, bringing this petition, without evidence of negotiation or of attempts to negotiate, would be enough to satisfy the requirements of the statute in regard to that. *Burt* v. *Brigham*, 117 Mass. 307. *Ætna Mills* v. *Waltham*, 126 Mass. 422.

Upon the facts agreed, we think the allegations of the petition are established, and that commissioners should be appointed to determine the compensation to be paid by the respondent for the franchise and property of the petitioner.

*Ordered accordingly.*