INHABITANTS OF REVERE *vs.* REVERE WATER COMPANY.

Suffolk.    March 19, 20, 1914. — May 25, 1914.

Present: RUGG, C. J., HAMMOND, LORING, SHELDON, & CROSBY, JJ.

*Equity Jurisdiction,* Rescission. *Contract,* Rescission, Modification. *Revere. Waterworks. Municipal Corporations,* Power to borrow money for water-works.

Jurisdiction of a suit in equity for the rescission on the ground of fraud of a contract of sale and of a conveyance made in accordance therewith cannot be retained for the purpose of changing material stipulations of the contract as to the price to be paid by the purchaser after proper findings have been made that no fraud entered into the transactions.

In a suit in equity by the inhabitants of the town of Revere against the Revere Water Company, seeking to have declared void the contract of sale of the defendant's waterworks to the town which was held in *Seward* v. *Revere Water Co.* 201 Mass. 453, to have been authorized by the town and to be in accordance with its votes and with statutory authority, that decision was affirmed and, on findings made by a master, it was *held* that the contract was not made under any mutual mistake; *and also,* that the fact, that the amount of the bonds to be issued in accordance with the contract was in excess of the debt limit of three per cent of the last tax valuation prescribed by R. L. c. 27, § 4, was not material, it appearing that it did not exceed the limit of ten per cent of that valuation prescribed by R. L. c. 25, § 32, as to bonds issued for the purchase of such rights.

In the same suit it was held that the purchase by the town from the company was not consummated by the vote of the town, but only by the conveyance of the property to the town, so that until such conveyance the company was entitled to the net profit of its business and was not subject to certain provisions of the contract relating to amounts spent for new construction.

BILL IN EQUITY, filed in the Superior Court on February 11, 1909, and there amended and removed to this court, where it further was amended several times, seeking to have an agreement of sale between the town of Revere and the Revere Water Company (hereinafter called "the company") and the sale and conveyance made in accordance therewith declared void on the ground of fraud, and for certain other relief hereinafter described.

The suit was referred to Boyd B. Jones, Esquire, as master. In his report, filed on March 29, 1913, he stated the purposes

of the suit when it was heard by him to be as follows: "The town seeks by this suit to have the court annul a contract of sale and purchase between it and the company, dated April 15, 1904, as modified by an agreement dated December 31 of the same year, a deed from the company to it of the waterworks in Revere and other property of the company, and a vote of the town accepting St. 1904, c. 457, authorizing the town to acquire the property thus conveyed and to issue bonds for the purpose of paying for it. The town also asks that bonds to the amount of $360,000, received by the company under the contract of sale and purchase, should be returned to the town by the company. . . . It was claimed by the town at the hearing that the price paid for the property was from $150,000 to $200,000 in excess of its fair value, and that the agreement to purchase, and the payment of that price, was obtained by the company because of certain false representations made by the company and its agents."

The transactions which formed the subject matter of the suit were as follows:

On May 3, 1904, the town of Revere, acting under the authority of St. 1882, c. 142, § 7, the charter of the defendant, adopted a contract of purchase of the company's plant and property, dated April 15, 1904, and to be performed January 1, 1905, at the price of $350,000 in addition to the value of stock and tools on hand and new construction, payable in the bonds of the town. One provision of this contract was that after its adoption the company should undertake no new construction without the committee's consent in writing.

On petition of the town St. 1904, c. 457, was enacted, authorizing the town to supply itself with water, § 11 forbidding it to do so until it should have purchased the company's property (except its property in Winthrop) on the terms of the company's charter, and § 5 authorizing the issue of bonds not exceeding $400,000 for the purchase. The act, being subject to acceptance by the town, was accepted at a meeting held on October 24, 1904, and at the same meeting the town voted to "purchase the property, rights and privileges of the Revere Water Company, excepting the property situated in the town of Winthrop, in accordance with the provisions of chapter 457 of the acts of 1904."

On December 29, 1904, the town, not being ready to complete

the purchase, instructed its committee to procure and execute with the company an extension of "the time for completion of the purchase of the company's property under the agreement dated April 15 and the votes of the town of May 3 and October 24, 1904." Under this vote a contract was executed on December 31, extending the time for completion of the purchase to April 1, 1905, the company to operate the plant and have the earnings until that time. At an adjournment of this meeting, January 2, 1905, the contract of extension was presented, and the town voted to issue $360,000 bonds, to be sold and delivered to the company "in payment for its property under and according to the agreement of purchase dated April 15, as extended by agreement dated December 31, and the votes of the town of May 3 and October 24, 1904, so far as necessary therefor."

On April 1, 1905, the purchase was carried into full effect in exact accordance with the contract of April 15, 1904, and the foregoing votes, the company deeding the property to the town and the town paying with its bonds the purchase price of $350,000 plus $2,358.98, the value of stock and tools on hand, and $2,560.09, the value of new construction, as ascertained by the town's engineer in accordance with the contract, the town subsequently, after collection of the water rates in July, accounting to the company for the earnings to April 1. The town took and thereafter retained possession and management of the property.

As to the allegations of fraud and false representations in the amended bill, the master found as follows:

"I find and report that the town committee referred to was not selected or appointed by Burnham [then a director, superintendent of, and stockholder in the company,]; that it was made up of disinterested persons from various walks of life, including members of the legal and medical professions, that it was not actuated by motives other than that of promoting the welfare of the town; that before arriving at any conclusion or making any report to the town it had become satisfied that any judgment it might form upon its independent and unassisted investigation would not warrant municipal action upon a matter of so much importance, and had employed a hydraulic engineer of good standing, one Freeman C. Coffin, upon whose recommendations and advice it relied and acted in making its own reports to the town. It was

admitted by the town that the engineer acted in good faith, and not in collusion with the company.

"I also find that in dealing with the legal questions which arose the committee acted upon the advice of reputable and competent lawyers, of whom one was attorney for the town and the other was a member of the committee. I further find that these lawyers were in no respect under the influence or control of the company, and that, in advising the committee and in representing it and the town, they were actuated only by a desire to guard the town's interests.

. "I find that neither the company nor any person sustaining the relation of officer, stockholder, agent, or otherwise to the company, made any representation to the town, or to its committee or to any one representing it, as to either the condition or adequacy of the water system or property sold to the town. On the contrary, it affirmatively appeared from the evidence introduced by the town, and I find, that the committee adopted the views of its engineer upon these matters and that he formed his conclusions as to the adequacy of the system from the length and dimensions of the water pipes and such examination of the pipes and system as he deemed it necessary to make. The dimensions of the pipes and their ages he obtained from the records of the company and from Mr. Burnham. . . . The information which the engineer thus obtained was correct. . . .

"Neither the engineer, the committee, nor the town acted or were influenced by any representation made by the defendant or any one representing it as to the value of the whole or any part of the system purchased by the town. The committee relied on the valuations made by the engineer. . . .

"I further find and report that the earnings and expenses of the company were not falsely stated by it, or any one representing it, but that, on the contrary, the company's earnings and expenses were fully and correctly disclosed to the engineer, and appear in his confidential report to the committee. . . .

"I find on all the evidence in the case, that the town in making the purchase relied wholly upon the advice and recommendations of its committee and an engineer employed by that committee; that the committee and engineer acted honestly, and that neither the company nor any one representing it or interested in it made

any false representation or were guilty of any fraud or conceal-
ment, and further that Burnham did not occupy, and was not
understood by the town or any one representing it to occupy, any
relation of trust and confidence to the town."

The master also found that "the valuation of the town of
Revere on May 1, 1904, was $12,197,225; and that on May 1,
1905, it was $12,263,200. On April 15, 1904, the town indebted-
ness was $295,750; on May 3, 1904, it was $430,750, and on Oc-
tober 24 the town indebtedness was $452,775."

During the hearings before the master on February 3, 1913,
the plaintiff filed a motion to amend the prayers of the bill.
This motion was allowed by a decree dated October 21, 1913,
after the master's report was filed. As thus amended, the prayers
of the bill were (1) "that each and every one of the alleged con-
tracts between said company and said town or said committee
purporting to fix the price to be paid by said town to said com-
pany, and to fix the conditions of said sale, purchase, and trans-
fer, be declared null and void; (2) that the alleged deed of con-
veyance from said company to said town be cancelled, and that
said company be ordered and decreed to execute and deliver
forthwith to said town a proper and sufficient deed for the prop-
erty and rights purchased by said town; (3) that said company
be ordered to account to said town for the town of Revere water-
loan bonds now in its possession or control, and for the par value
of any of said bonds which have been sold, transferred, or other-
wise disposed of by said company, and for all money paid to said
company by said town or its agents on or after April 1, 1905;
(4) that said company be ordered to account to said town for the
care of, and for the rents, income, and profits derived from, the
property and rights of said company during the time said com-
pany remained in possession and control of said property and
rights from and after the date of the purchase by said town;"
(5) that commissioners be appointed to determine the compen-
sation to be paid by the town for the property and rights of
the company purchased by the town; (6) for damages; (7) for a
receiver; (8) that the company be enjoined "from distributing
or expending any of the money, funds, or credits now in its con-
trol or possession or owed to it until the final disposition" of the
case, and (9) for general relief, "to the end that said company

shall not profit unjustly and illegally at the expense of said town."

By order of *Loring*, J., exceptions of the plaintiff to the master's report were overruled, the report was confirmed, and a final decree was entered dismissing the bill with costs.

The plaintiff appealed.

The plaintiff's brief contained the following statement: "The town agrees that it became, and is now, the owner of so much of the water system as it was authorized to purchase, and that the Company is entitled to payment for the fair value thereof." The plaintiff argued that the sale was consummated at the time of some one of the votes of the town previous to April 1, 1905, when the conveyance was made, and therefore that the town was entitled to what the company had received as net income since that time (whichever should be selected) and should not have been charged in the accounting and adjustment immediately following the purchase with expenditures for new construction made since such date, but should be allowed to recover what sums were so charged to it.

*R. Walsworth*, for the plaintiff.

*A. E. Pillsbury*, (*G. M. Palmer* with him,) for the defendant.

SHELDON, J.  This bill was brought to rescind the sale to the plaintiff of the defendant's waterworks and plant, for alleged fraud of the defendant.  Upon the facts found and reported by the master, that contention cannot be maintained.  If this report is confirmed, yet the plaintiff, though not rescinding its purchase but retaining the property acquired thereby, now seeks to set aside the stipulation for the price which it was to pay, and to have the amount thereof determined anew, by making certain deductions from the agreed amount thereof.  Equity cannot do this; it would be to make a new agreement for the parties.  *Non constat* that the agreement would have been made at all if one of its material stipulations had been altered.  If the town has a right to recover any of the sums claimed here, that right must be enforced at law.  *Andrews* v. *Moen*, 162 Mass. 294.  *Tuttle* v. *Batchelder & Lincoln Co.* 170 Mass. 315, 317.  This fundamental objection to the maintenance of the bill goes deeper than the cases cited.  The bill seeks to rescind the whole agreement; it cannot be maintained for the mere elimination of one of its material

elements and the substitution of something else which the parties did not agree upon. It is of no consequence that one party, or even that the court, might think that the proposed substitution was of something that the parties properly might have agreed on. See *Coffing* v. *Dodge,* 167 Mass. 231, 233.

The agreement was not void upon its face. It was in accord with the statutes under which it was made. *Seward* v. *Revere Water Co.* 201 Mass. 453. It was authorized by the town. It was not made under any mutual mistake. That the amount of the bonds to be issued thereunder was in excess of the statutory debt limit is not material because of the purpose for which they were issued. R. L. c. 25, § 32; and c. 27, § 2.

This was not a purchase accomplished by the very vote of the town; it was an agreement, carried into effect by a subsequent sale and purchase. The property did not pass to the town upon the passage of the vote, but only upon the consummation of the transaction. Such cases as *Braintree Water Supply Co.* v. *Braintree,* 146 Mass. 482, and *Rockport Water Co.* v. *Rockport,* 161 Mass. 279, do not apply here. Accordingly, if it could maintain the bill, the plaintiff could not recover the amount received as income or the amount spent for new construction in the meantime.

So far as the plaintiff's exceptions to the master's report are not covered by what has been said, we see no occasion to discuss them. None of them can be sustained.

The decree dismissing the bill must be affirmed with costs.

*So ordered.*