COHASSET WATER COMPANY *vs.* TOWN OF COHASSET
& another.

Suffolk.   November 8, 1946. — March 6, 1947.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN & SPALDING, JJ.

*Cohasset Water Company. Municipal Corporations,* Water supply. *Water Company. Sale,* Of waterworks, Contract of sale, Transfer of title, Transfer of possession, Price. *Contract,* For sale of waterworks, Option, What constitutes, Rescission. *Value. Reference and Referee. Public Utilities. Declaratory Judgment. Equity Jurisdiction,* Declaratory relief.

The option given to the town of Cohasset by St. 1886, c. 128, § 9, to purchase the franchise and property of the Cohasset Water Company was effectively exercised by an affirmative vote to that effect by two thirds of the voters present and voting at a duly called town meeting; noncompliance with some of the requirements of G. L. (Ter. Ed.) c. 40, § 38, as appearing in St. 1938, c. 172, § 2, was immaterial.

A vote by the town of Cohasset to exercise its option under St. 1886, c. 128, § 9, to purchase the franchise and property of the Cohasset Water Company did not of itself operate to transfer to the town title to any of the assets of the company; subsequent deeds and payment of the purchase price were required for such transfer.

In a purchase by the town of Cohasset of the franchise and property of the Cohasset Water Company pursuant to St. 1886, c. 128, § 9, the value thereof must be fixed as of the time of the town's vote to purchase rather than as of the time of the conveyance to and payment by the town.

In the interval between the time of a vote of the town of Cohasset to purchase the franchise and property of the Cohasset Water Company under St. 1886, c. 128, § 9, and the time of conveyance of title to the town, the company would remain in possession of and would operate the property for its own account and not as agent or trustee for the town, but subject as vendor to the obligation of "good husbandry."

Statement of general principles governing operation of the waterworks of the Cohasset Water Company by the company during the interval between the time of a vote of the town of Cohasset to purchase the franchise and property of the company under St. 1886, c. 128, § 9, and the time of conveyance to the town.

Proceedings under St. 1886, c. 128, § 9, for the determination of the value of the franchise and property of the Cohasset Water Company in a purchase by the town of Cohasset are still to be initiated in this court, although under G. L. (Ter. Ed.) c. 165, § 5, reference must be made to the department of public utilities; but that department, in con-

ducting its hearings under the reference, must adopt a wholly judicial, not an administrative, procedure and may receive and consider nothing but evidence presented to it by the parties.

The option given to the town of Cohasset by St. 1886, c. 128, § 9, to purchase the franchise and property of the Cohasset Water Company was exercised by a vote to purchase adopted by the town in accordance with the statute, and there was thus completed between the town and the company a contract which could not be rescinded by the town without the consent of the company.

In general, all the property of the Cohasset Water Company, including cash, bills receivable and other intangibles, would be embraced in a purchase by the town of Cohasset under St. 1886, c. 128, § 9.

This court exercised discretion broadly in granting declaratory relief to the town of Cohasset and the Cohasset Water Company respecting certain questions arising from the town's exercising its option to purchase the franchise and property of the company pursuant to St. 1886, c. 128, § 9.

BILL IN EQUITY, filed in the Superior Court on March 15, 1946.

The suit was heard upon an agreed statement of facts by *O'Connell*, J., who reported it without decision.

*R. G. Dodge*, (*R. A. Cutter* with him,) for the plaintiff.

*F. A. Thayer*, Town Counsel, for the defendant Town of Cohasset, submitted a brief.

QUA, J. The Cohasset Water Company, hereinafter called the company, was specially incorporated by St. 1886, c. 128. See amendments by St. 1908, c. 406, and St. 1946, c. 489. Section 9 of the statute of 1886 contains provisions authorizing the town to purchase at any time the franchise and property of the company. At a town meeting on March 2, 1946, the town, by more than the required two thirds of the voters present and voting, voted to purchase the franchise, corporate property, and all the rights, powers and privileges of the company in accordance with the statute. Questions have arisen between the company and the town as to the effectiveness of this vote, as to the mechanics of the transfer of title and of determining the price, if the vote is effective, as to the operation of the company in the meantime, as to whether the town can rescind its action if it should be confronted with a finding of valuation which it regards as excessive, and as to exactly what property passes to the town. Out of this situation has arisen the present

suit in equity in which both parties seek declaratory relief. The facts are agreed.

1. The company contends that the vote of March 2, 1946, was ineffective because, although there had been compliance with the requirements of the provisions in the company's charter relative to purchase by the town, there had not been compliance with the different requirements of the first paragraph of G. L. (Ter. Ed.) c. 40, § 38, as appearing in St. 1938, c. 172, § 2, particularly the requirement of preliminary action by the selectmen before the town meeting. The question is whether the town was obliged to comply with these provisions of general law as well as with the special provisions of the charter. The issue requires an examination of both statutes, and as the charter provisions, which are found in St. 1886, c. 128, § 9, will be pertinent to other issues in the case as well as to the present one, we here quote or summarize all of the provisions of that section material to the case.

"The said town of Cohasset shall have the right at any time to purchase of said corporation its franchise, corporate property and all its rights, powers and privileges at a price which may be mutually agreed upon . . . and said corporation is authorized to make sale of the same to said town. If said corporation . . . and said town are unable to agree, then the compensation to be paid shall be determined by three commissioners to be appointed by the supreme judicial court, upon application of said town and notice to the other party, whose award when accepted by said court shall be binding upon all parties." The section then provides that if the value shall exceed the amount of any mortgage debt upon the property "said town shall acquire such franchise, property, rights, powers and privileges by paying said corporation such excess . . . but if the value so found should be less than the amount of such mortgage debt, then said town shall acquire such franchise, property, rights, powers and privileges . . . by paying said mortgagees the amount of the value so found . . . and . . . shall thereupon hold and possess such franchise and all said corporate property . . ." The section finally pro-

vides that the right to purchase is granted on condition "that the same be authorized by a two-thirds vote of the voters of said town present and voting thereon at a meeting called for that purpose."

The first paragraph of G. L. (Ter. Ed.) c. 40, § 38, as appearing in St. 1938, c. 172, § 2, reads as follows: "A city, by a two thirds vote of its city council, ratified by a majority of the voters thereof at an election called for the purpose, or a town, by action of its selectmen, ratified by a majority of its voters present and voting thereon at a town meeting at which the voting list shall be used, may, for the purpose of supplying water to itself and its inhabitants, purchase of any municipal or other corporation the right to take water from its sources of supply. or from its pipes; or may purchase its whole water rights, estates, franchises and privileges, and thereby become entitled to all its rights and privileges and subject to all its duties. and liabilities; or, by its board of water commissioners or officers performing like duties, may contract with any such corporation for a supply of water. Any municipal corporation, by its water department, may make such a sale or enter into such a contract to supply water to a city or town."

It will be seen that the charter provision appears to be complete in itself; that it contains no reference to what is now the first paragraph of G. L. (Ter. Ed.) c. 40, § 38, as amended, although corresponding provisions existed in Pub. Sts. c. 27, § 27, at the time the charter was enacted; and that the charter conditions the right to purchase solely upon a two-thirds vote at a town meeting. General Laws (Ter. Ed.) c. 40, § 38, on the other hand requires preliminary action by the selectmen, ratified by a simple majority vote at a town meeting at which the voting list is used. Although it would be literally possible to comply with both the charter and § 38 at the same time, since two thirds make one kind of a majority, the provisions of these two statutes are essentially inconsistent, if it be supposed that both were intended to be used in the same instance. There is, however, no real inconsistency, because the two statutes were designed for different purposes and were not intended

to be used together on the same occasion.   Section 9 of the charter was designed solely to supply a means by which the town of Cohasset could exercise an option to purchase the franchise and property of the Cohasset Water Company, against the will of that company, if it did not agree, as a condition upon which that particular company was allowed to have a charter.   Section 38, on the other hand, is a general statute applicable to all cities and towns, simply authorizing them as a part of their municipal functions to obtain a water supply from any corporation, including other municipalities, by voluntary purchase or contract.   *Smith* v. *Dedham*, 144 Mass. 177, 178.   When the original statute from which this section derives was enacted as St. 1870, c. 93, it was appropriately entitled "An Act to authorize cities and towns to purchase water-rights," and it still appropriately appears as part of a chapter entitled "Powers and Duties of Cities and Towns."   It contains no means whatever of compelling any corporation to sell anything. Doubtless the town of Cohasset, under the authority conferred upon it in common with all other cities and towns by § 38, could have approached the water company with an offer to purchase, but that is all it could have done under § 38, and as the water company is unwilling to sell, except under compulsion, nothing would have been accomplished, unless perhaps at an excessive price.   Instead of doing this the town chose to exercise to the fullest extent the special right conferred upon it by the company's charter in the manner there provided, thus assuring itself of its right to purchase and availing itself of its right to have the price fixed in the manner there set forth.   *Braintree Water Supply Co.* v. *Braintree*, 146 Mass. 482, 487.   *Revere Water Co.* v. *Winthrop*, 192 Mass. 455, 460–461.

We therefore conclude that the town was not required to comply with § 38, and as no other reason has been urged for holding the vote of the town insufficient, and as the agreed facts disclose none, declaration must be made that the vote of the town of March 2, 1946, was an effective exercise of the town's option to purchase the franchise and property of the water company.

2. Although we hold that the vote of March 2, 1946, was effective as an exercise of the town's option to purchase, we are of opinion that the mere passage of that vote did not transfer to the town the title to any assets of the company. Under the wording of the act of 1886 the town has the right "to purchase," and the company is authorized "to make sale." It is provided that the town "shall acquire" the assets of the company "by paying" therefor, and that the town "shall thereupon," that is, upon paying the price, "hold and possess" the assets of the company. These expressions look forward to the giving and acceptance of a deed or deeds and to the concurrent payment of the price as the acts which shall be operative to effect actual transfer of title. In the case of *Braintree Water Supply Co.* v. *Braintree,* 146 Mass. 482, at page 486, this court in dealing with a similar statute said, "The authority conferred was not the power to take property by an exercise of the right of eminent domain, but it was somewhat analogous to it. It was an authority to the town to determine absolutely by its own act in the form of a two-thirds vote, at any time during the continuance of the charter, that the petitioner's property and franchise should become its own. The statute calls it a right to purchase, and seems to contemplate a transfer of title in the form of a sale, and the execution of some proper instrument as evidence of the transfer. For if the town should vote to purchase after the petitioner's works had been constructed, there might be a great variety of property, real and personal, to be transferred, and no way is pointed out in which the town could obtain and preserve in convenient form the evidence of its title except through an instrument of sale. But as a preliminary to fixing the rights of both parties, of one to have the franchise and property, and the other to have the pay for it, no writing and no negotiation was required, — nothing but the vote of the town declaring its determination." See *West Springfield* v. *West Springfield Aqueduct Co.* 167 Mass. 128, 133. The case at bar is to be distinguished from *Rockport Water Co.* v. *Rockport,* 161 Mass. 279, where there had been an actual taking under the statute there involved

and not, as here, a mere vote to purchase.  Compare *Revere v. Revere Water Co.* 218 Mass. 161, where there had been a consummated agreement to purchase and it was held at page 167 that title passed only upon the consummation of the transaction.

We hold that title did not pass by the vote of the town, but that it will pass only upon the execution of proper conveyances and the payment of the price, to be ascertained as provided in the act of 1886, as amended.  This conclusion finds further support in the opinion of Mr. Justice Brewer in *National Waterworks Co.* v. *Kansas City*, 62 Fed. 853, at pages 863–864, and in *Los Angeles City Water Co.* v. *Los Angeles*, 103 Fed. 711, 733–739.

3. We do not think it follows that, because title does not pass until deeds are given and the price paid, the value must be fixed as of the time of the conveyance.  It is plain that the Legislature in enacting the charter of the company intended to give the town power to acquire the assets of the company, but it left many of the details of the method of acquisition to be determined by construction or implication.  The court must evolve a practical and effective method of carrying out the legislative intent.  Serious difficulties are inherent in any attempt to determine value as of the moment of transfer of title.  Under this statute the date of transfer cannot be known at the time the value is being fixed.  Value determined as of the time of transfer must always be determined in futuro and must always be subject to the uncertainties involved in looking ahead even for comparatively short periods of time.  And the time might not be very short.  After the close of the evidence some time would be required for consideration and the making of a decision.  Questions of law must then be determined by this court.  After that the town must raise the necessary money, presumably by issuing bonds or notes as provided by § 10 of the act of 1886 as now appearing in St. 1946, c. 489, § 2.  All this takes time — time enough for substantial changes to take place both in the form of the property itself and in its value.

Although the charter of the water company proceeds upon

the theory that the town acquires title by way of contract and conveyance rather than by way of taking by eminent domain, yet a compulsory sale of the kind contemplated is in certain respects analogous to a taking. *Braintree Water Supply Co.* v. *Braintree,* 146 Mass. 482, 486. Statutes providing for a taking commonly require some overt act to be performed which constitutes the taking, as of the time of the performance of which the value is to be ascertained. See, for example, G. L. (Ter. Ed.) c. 79, §§ 3, 12; *Hampden Paint & Chemical Co.* v. *Springfield, Athol & Northeastern Railroad,* 124 Mass. 118; *Wood* v. *Milton,* 197 Mass. 531, 534–535; *Greenspan* v. *County of Norfolk,* 264 Mass. 9, 12. In this instance the only comparable overt act is the two-thirds vote of the town to purchase the assets of the company. By that vote the rights of the parties were fixed and the company became finally bound to sell. From that time on the company had no future from the investment standpoint. If the parties were dealing with each other on a voluntary basis the price would in all probability have been fixed when the contract was made, even though conveyance was to be made later. No doubt the act of the town was predicated upon the opinion of the voters as to the value of the plant at the time of the vote. No other time for the ascertainment of value seems as well suited to the legislative plan as that time. In *Rockport Water Co.* v. *Rockport,* 161 Mass. 279, where, however, there was an actual taking and not, as here, a mere contract to buy, this court said, at page 280, "The time of the vote purports to be the time of the purchase. If the actual cost which the town is required to pay is not to be estimated up to that moment, it is hard to fix any other." In *Gloucester Water Supply Co.* v. *Gloucester,* 179 Mass. 365, 383, title had already passed to the city before the time came for determining value. Inasmuch as value must of necessity be ascertained as of some moment of time, we think that the time of the vote should be taken as the time intended by the statute. This may seem to involve an anomaly in that the town must pay a value ascertained as of a time before possession passes, but this objection seems more fanciful than real, since the town is not

liable for interest, at least until the time comes when it ought to accept a deed and to receive possession. It seems to us that the difficulties are less than as if value were ascertained as of some other time, which must be arbitrarily selected.

4. Questions arise as to how the company is to be operated in the interval between the vote of March 2, 1946, and the actual acquisition of title and possession by the town. We think the groundwork for the decision of all questions of this kind was laid by the opinion of this court in *Braintree Water Supply Co.* v. *Braintree*, 146 Mass. 482, at page 486. The court there said, "The Legislature conferred upon the company the corporate franchise, with a condition annexed in favor of the town. By accepting its charter, the corporation impliedly agreed to sell, whenever the town by vote should decide to buy. The legal relation of the parties was as if the corporation had made in writing a continuing offer to sell, at a price to be subsequently agreed upon by the parties, and in default of agreement to be fixed by commissioners. The vote of the town to buy was an acceptance of the offer, which completed the contract. The rights of the parties were then the same as if both had signed an executory contract, binding one to sell and the other to buy, at a price to be agreed between them, or determined under the statute. Neither party could then defeat the right of the other to have the contract executed. By the terms of the statute, it was to be specifically performed." The company is therefore in the position of a vendor under contract to convey to the town at a future date. There is nothing in the statute to indicate that the Legislature intended that possession should pass to the town before the title itself should pass. The words "and said town shall thereupon [that is, upon payment] hold and possess such franchise and all said corporate property . . ." tend to indicate the contrary. The company will therefore remain in possession until conveyance is made, as would any other vendor in the absence of agreement to the contrary (*Barrell* v. *Britton*, 244 Mass. 273, 278; see *Lyon* v. *Cunningham*, 136 Mass. 532, 537), and in the interval the company will operate the works for its own account and not as agent or trustee for

the town. In general the obligations of the parties will be governed by the law applicable to vendor and vendee of real estate, where the vendor remains in possession pending the conveyance. In this Commonwealth in such cases the vendor is not held to be a trustee for the vendee. *Wells* v. *Calnan,* 107 Mass. 514. *Libman* v. *Levenson,* 236 Mass. 221. *Barrell* v. *Britton,* 244 Mass. 273, 278–279. *Beal* v. *Attleborough Savings Bank,* 248 Mass. 342. *Barrell* v. *Britton,* 258 Mass. 383, 389. Williston on Contracts (Rev. ed.) §§ 937, 938. A result similar to that reached by us was reached in *Bremerton* v. *Bremerton Water & Power Co.* 88 Wash. 362, 367, 372.

But the company as a vendor under contract will be held liable to the obligation of "good husbandry" while it retains possession, and that obligation must be defined with reference to the special nature of the property here involved, and with reference to the undoubted intention of the Legislature that the company's franchise and property should be turned over to the town as a going concern in full operation, and that a necessary public service should not suffer interruption or impairment during the period of transfer. The plant must be preserved and kept in repair. Replacements should be made as required. Reasonable insurance should be maintained. Service may be extended to new customers in the ordinary way, including necessary laying of new mains to a reasonable extent. Except as demanded for service to new customers in the normal course of covering adequately the area dependent upon the company for service, new capital investment not derived from assets the company had on March 2, 1946, should be avoided, unless clearly required to preserve the plant or to prevent interruption of service. The company must not withdraw unearned profits. The duties of both parties in regard to these matters may be enforced by appropriate legal proceedings, and necessary accounting may be had as in other cases between vendor and purchaser. In so far as may be necessary such proceedings may be had apart from the determination of value in accordance with the charter. We see no reason why the parties may not regulate such matters by proper voluntary

contract between themselves not inconsistent with the statute, as they have already in one instance undertaken to do. Views similar to ours in respect to similar questions were adopted in *National Waterworks Co.* v. *Kansas City*, 62 Fed. 853. See paragraph "Ninth" of final decree, at page 868.

We are well aware that many issues may arise out of the operation of the company before title can be conveyed, but we cannot anticipate or decide them now, or go farther than we have gone in endeavoring to indicate the general principles by which we think they must be determined.

5. A decision is sought as to the right of the company to a purely judicial hearing for the determination of the value of its property under its charter as affected by the subsequently enacted provisions now found in G. L. (Ter. Ed.) c. 165, § 5. The charter, St. 1886, c. 128, § 9, provided that the compensation to be paid should be determined by three commissioners to be appointed by this court, "whose award when accepted by said court shall be binding upon all parties." General Laws (Ter. Ed.) c. 165, § 5, provides that in all proceedings for the acquisition by a town of the waterworks and other property of a water company created by special law providing for the appointment of commissioners for the determination of the price to be paid for such waterworks and property, "the matters to be referred to, heard and determined by, such commissioners shall be referred to, heard and determined by, the department [of public utilities], and its determination and award shall have the same force and effect as if the determination and award had been made by the commissioners provided for in the charters of such companies." The town has already applied to this court, and the proceeding is now pending. The town contends that when the reference is made to the department of public utilities that department can proceed as an administrative board "as in rate cases" by sending out its own engineers to make surveys and to do field work and to make their reports to the department, upon which the department may act in determining value. The

company contends that the department must act in a strictly judicial capacity and can receive only evidence presented to it by the parties.

The original procedure as provided for in the charter was wholly judicial from beginning to end. It was in no sense an administrative procedure or a "quasi judicial" procedure. The proceedings were to be initiated in this court, which was to appoint the commissioners, whose report was to be of no effect until accepted by this court. The commissioners were to be officers of the court. *Gloucester Water Supply Co.* v. *Gloucester,* 185 Mass. 535, 537. They must act throughout as judicial officers under all the safeguards thrown about the exercise of strictly judicial functions. After the enactment of what is now G. L. (Ter. Ed.) c. 165, § 5, the proceedings are still to be initiated in this court as before. This court is still to make the reference as before, except that the reference is to be made to the department instead of to commissioners selected by the court. The determination and award of the department is to have the same effect as if it had been made by commissioners appointed by this court, that is, no effect until it is accepted by the court. We cannot give to the amendatory statute a broader scope than its words declare. The new statute did not substitute a proceeding before the department for the proceeding in court. It retained the proceeding in court. It is not to be assumed in the absence of clear language that the Legislature intended to create an anomalous procedure partly administrative and partly judicial, or that it intended to deprive water companies of their existing rights to a determination of the compensation to be paid for their assets by means of a wholly judicial decision. We do not think it necessary to consider whether such action by the Legislature would raise constitutional issues. See *Opinion of the Justices,* 300 Mass. 607. No question has been raised as to the constitutionality of § 5 interpreted as we interpret it. We hold that the company still has the right to a wholly judicial decision by judicial methods, and that the department cannot make its own independent investigations or prepare and present evidence through its engineers or other-

wise,. but that it must receive only evidence presented to it by the parties.

6. The town, having definitely exercised its option to purchase, has completed the contract between itself and the company and cannot now rescind without the consent of the company. *Braintree Water Supply Co.* v. *Braintree,* 146 Mass. 482, 487. *Hudson Electric Light Co.* v. *Hudson,* 163 Mass. 346, 348. The slight difference between the charter of the Cohasset company and that of the Braintree company in that the Braintree charter speaks of an "application of either party" for the appointment of commissioners, while the Cohasset charter speaks only of "application of said town," does not, we think, alter the substantial obligations of the parties. The town has already made the application. If it had not, the company could have compelled it to do so. We see no obstacle, however, to a rescission by agreement or consent.

7. Under the terms of the charter the property to be purchased by the town embraces all the property of the company, including cash, bills receivable, and other intangible personalty. St. 1886, c. 128, § 9. In making this general statement we do not intend to prejudge such questions as might arise if, for example, on the day as of which the value of the company's assets is to be determined it should have had on hand cash representing accrued profits which might properly be paid out in the form of dividends before title should pass. We leave all such details for future determination, if the parties cannot agree.

We have exercised our discretion very broadly in this case ·in favor of declaratory relief for the reason that a decision of all these matters seems important to enable the parties to deal intelligently with the situation before them, to agree between themselves as far as possible, and to reduce as much as possible the area of future litigation. In different circumstances we might think that some of the questions presented were not proper subjects for a declaratory decree.

A final decree is to be entered in accordance with this opinion.

*So ordered.*