Connon, Richard F., J.
BACKGROUND
This action involves a ten taxpayers’ suit against the Town of Barnstable, which claims that said town improperly purchased the assets of the Barnstable Water Company without a vote of the residents of said town authorizing funds which would pay for the acquisition. The plaintiffs are seeking a special election and injunctive relief. The specific counts as alleged in the complaint are: Count I, failure to comply with G.L.c. 40, §38; Count II, failure to comply with the 1911 Act; Count III, a violation of the so-called “Enterprise Fund” under G.L.c. 44, §53F 1/2; and Count IV, failure to comply with bidding laws. The defendant is now moving to dismiss pursuant to M.R.C.P. 12B(6).
In 1911, the Massachusetts Legislature chartered the Barnstable Water Company under the provisions of the Acts of 1911, Chapter 286, which granted the Town of Barnstable under Section 12 the unilateral right to purchase assets of the Barnstable Water Company for a statutorily defined price based on the actual cost of the company’s property. At the time Chapter 286 of the Acts of 1911 were enacted, the Town of Barnstable had a “town meeting” form of government. In 1989, the Town of Barnstable converted to a “city” form of government wherein the Town Manager performs the executive functions and the Town Council performs the legislative functions. In March of 2005, the Barnstable Town Council authorized the Town Manager to purchase the assets and the franchise of the Barnstable Water Company. The purchase was completed on May 20, 2005. No vote had been taken to approve the said acquisition. Section 12 of Chapter 286 states in part that the Town of Barnstable shall have the right at any time during the continuance of the Charter hereby granted, to acquire by purchase or by exercise of the right of eminent domain, the franchise property and all the rights and privileges of said corporation on payment of said corporation of the actual cost of its franchise works and property of any kind held under the provisions of this Act. The authority to take the said franchise and property is granted on condition that the same is assented to by the said Town by a two-thirds vote of the voters present and voting thereon at a meeting legally called for that purpose.
The plaintiff in Count I is alleging that the Town failed to comply with the provisions as outlined in G.L.c. 40, §38. However, in the matter of Cohasset Water Company v. Town of Cohasset 321 Mass. 137, 139 through 141 (1947), the court held that the requirements of Section 38 for a vote of the voters does not apply when a Town has a unilateral right to acquire a water company’s assets and franchise. The Town of Barnstable had such a right, which was provided for in Section 12 of the Charter. The case of Cohasset Water Company v. Town of Cohasset is not unlike the case of the Town of Barnstable in its acquisition of the Barnstable Water Company. The court in the Cohasset case said that the Town was not required to put the issue to the voters under Section 38 when it had a right under a special statute to acquire the franchise and assets of the water company. As such, Count I of the ten taxpayers’ complaint fails to state a claim upon which relief may be granted, and therefore it is hereby DISMISSED.
Under Count II of the ten taxpayers’ complaint, it alleges that a vote would be required under the provisions of Chapter 286 of the Acts of 1911, where it states that this authority to take the said franchise and property is granted on condition that the same is assented to by the said Town by a two-thirds vote of the voters present and voting thereon at a meeting legally called for that purpose. The Town of Barnstable is no longer operating under the “town meeting” form of government. By virtue of the Barnstable Home Rule of Charter, enacted in 1989, the Town of Barnstable was converted to a “city” form of government. The provisions of Chapter 286 simply address the “town meeting” form of government and not the “city” form of government. The Court must now determine what the legislative intent was when it in fact enacted Chapter 286 of the Acts of 1911. In the matter of Commonwealth v. Welosky, 276 Mass. 398, 401-02 (1931), the Court stated, “Statutes are to be interpreted, not alone according to their simple, literal or strict verbal meaning, but in connection with the history of the times, prior legislation, contemporary customs and conditions and the system of positive law, of which they are part. . ., to the end that they be held to cover the subject presumably within the vision of the legislature ...” The plaintiff would suggest that when a statute is clear and unambiguous that the Courts *419 construe the language in accordance with its plain and ordinary meaning, citing Foss v. Commonwealth, 437 Mass. 584, 586 (2002), but under the circumstances of this case, the Court, in consideration of the change from a “town meeting” form of government to a “city” form of government, is required to consider not only the simple and literal and the strict verbal meaning of a statute, but must do so with concerns for the history of the times, prior legislation,.. . and, in so doing, the Court could not possibly apply the meaning of Chapter 286 of the Acts of 1911 wherein it states that the authority to take the said franchise and property is granted on condition that the same is assented to by the said town by two-thirds vote of the voters present and voting thereon at a meeting legally called for that purpose. Because the Barnstable Home Rule Charter now expressly provides that the Town of Barnstable shall have a “city” form of government and that the Town Council shall assume all legislative powers of the town. The Town Council in fact has done that, with more than a two-thirds vote authorized the acquisition of the Barnstable Water Company, and consequently Count II of the ten taxpayers’ complaint fails to state a claim on which relief can be granted, and therefore it is DISMISSED.
With respect to Count III, G.L.c. 44, §53F 1/2 permits a town to create a separate account, called an Enterprise Fund, to operate a utility, and to deposit all receipts, revenues and funds from any source derived from the activities of the utility to that separate account. It is alleged by the ten taxpayers that the rates that will be paid by those who receive water will be used for nonwater company purposes and now seek an injunction that the Town of Barnstable manage the Enterprise Fund such that the rate payers are only paying for the assets of the company. Because Count III does not make allegations about funds derived from tax revenues and merely speculates about the operation of the Enterprise Fund, it fails to state a claim on which relief can be granted under the ten taxpayer suit, and for that reason, Count III is DISMISSED.
Count IV is likewise DISMISSED for failure to state a claim on which relief can be granted.