Tucker, Richard T., J.
Aquarion Water Company of Massachusetts, Inc. (“Aquarion”), a private company that presently owns and operates the Town of Oxford’s water supply and distribution system (the “water system”), brings this action for declaratory judgment seeking to establish the rights and obligations of Oxford and Aquarion during the interval between Oxford’s May 6, 2009, vote to purchase the water system and Oxford’s acquisition of title, which acquisition is opposed by Aquarion. Now before the court is Aquarion’s motion for a preliminary injunction. Aquarion requests that this court declare it entitled to be compensated for a proposed capital improvement to the water main located on Main Street, specifically the replacement of no less that 1,000 feet of water main for a cost of no more that $315,000.[2] Aquarion also requests that this court order Oxford to place sufficient funds in escrow to pay for the water main replacement. For the reasons explained below, this court will DENY Aquarion’s motion.
BACKGROUND
Aquarion is the successor to the Oxford Water Company, which was formed in 1904 pursuant to a charter granted by Special Act of the Legislature, St. 1904, c. 193, §§1-11 (the “Charter”). Under the Charter, the Oxford Water Company was granted the authority to distribute water in Oxford, make all reasonable regulations concerning the use of water, fix and collect rates, and supply water for any purpose for which water is ordinarily supplied. Section 9 of the Charter provides: “The town of Oxford shall have the right at any time to take by purchase or by the exercise of the right of eminent domain, the franchise, property, rights and privileges of said corporation on payment of the actual cost thereof.”
On May 6, 2009, exercising the right to so do set forth in section 9 of the Charter, Oxford residents voted at a special town meeting to acquire the water system from Aquarion. Pursuant to section 9, Oxford will not take title to the water system until it pays Aquarion the “actual cost thereof.” At the time of the hearing on this matter, Oxford had not taken title of the system.
On August 10, 2009, this action was consolidated with a civil suit filed by Oxford seeking declaratory judgment to establish the rights and responsibilities of Oxford and Aquarion with respect to Oxford’s vote to purchase the system. Town of Oxford v. Aquarion Water Company of Massachusetts, Inc., WOCV20090592.
DISCUSSION
To succeed on its motion for preliminary injunctive relief, Aquarion “must show that, without the requested relief, it may suffer a loss of rights that cannot be vindicated should it prevail after a full hearing on the merits.” Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 616 (1980). “Therefore, when asked to grant a preliminary injunction, the judge initially evaluates in combination the moving party’s claim of injury and chance of success on the merits ... [and] the judge must then balance this risk against any similar risk of irreparable harm which granting the injunction would create for the opposing party.” Id. at 617. “What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party’s chance of success on the merits.” Id. Because of the nature of this matter, this court “may [also] weigh the risk of harm to the public interest.” Bank of New England v. Mortgage Corp. of New England, 30 Mass.App.Ct. 238, 246 (1991), and cases cited. “Only where the balance between these risks cuts in favor of the moving party may a preliminary injunction properly issue.” Packaging Industries Group, Inc., 380 Mass. at 617. For the reasons stated below, this court concludes that Aquarion has not shown the requisite likelihood of success on the merits or loss of rights that cannot be vindicated after a full hearing.
The issue that arises here, as it did in Cohasset Water Co. v. Cohasset, 321 Mass. 137 (1947) ("Cohasset"), is “how the company is to be operated in *143 the interval between the vote [authorizing purchase of the water system]... and the actual acquisition of title and possession by the town.” Id. at 145. In Cohasset, the Supreme Judicial Court held: “the company as a vendor under contract will be held liable to the obligation of ‘good husbandry’ while it retains possession, and that obligation must be defined with reference to the special nature of the property here involved, and with reference to the undoubted intention of the Legislature that the company’s franchise and property should be turned over to the town as a going concern in full operation, and that a necessary public service should not suffer interruption or impairment during the period of transfer. The plant must be preserved and kept in repair. Replacements should be made as required. Reasonable insurance should be maintained. Service may be extended to new customers in the ordinary way, including necessary laying of new mains to a reasonable extent. Except as demanded for service to new customers in the normal course of covering adequately the area dependent upon the company for service, new capital inuestmentnot derived from assets the company had on [the date the town authorized the purchase], should be avoided, unless clearly required to preserve the plant or to prevent interruption of service.” Id. at 146 (emphasis added). Under the Charter, the “actual cost” for which Oxford has the authority to purchase the system is determined as of May 6, 2009, the day that the voters authorized the purchase. Oxford v. Oxford Water Co., 391 Mass. 581, 593 (1984). The Cohasset court explained that accounting for investments pursuant to the obligation of good husbandry made after the date on which purchase of the water system was authorized could be determined in appropriate legal proceedings or by voluntary contract. Id. at 146-47.
To succeed on the merits of this action for declaratory judgment, Aquarion will have the burden to prove that the proposed investment in the Main Street water main is required to fulfill its obligation of “good husbandry.” Id. at 146. Aquarion claims that the replacement of approximately 1,000 feet of the water main on Main Street prior to the end of the 2009 construction season is a necessary exercise of its obligation of “good husbandry.” In support of its contention, Aquarion offered the affidavit of Michelle Desorcy (“Desorcy”), Aquarion’s operations manager. Desorcy stated that between June 2008 and the end of that year, there were four water main breaks on Main Street in the area of the proposed water main replacement. She further stated that each water main break resulted in a disruption of service and an “extraordinary expense” to repair. Desorcy stated that a reasonable operator of the water system would make the proposed capital investment in the Main Street water main.
Desorcy referenced the a report prepared by David F. Russell (“Russell”), a professional engineer hired by Oxford to evaluate the economic and non-economic consequences of Oxford’s acquisition of the water system. In the report, Russell opines that improvements to the Main Street water main are a high priority and should be “made in the early years following municipal acquisition.” Russell, in his report and in a separate affidavit submitted to this court, suggested that Oxford plan to begin the Main Street water main replacement, as well as other high priority projects, in 2014. Russell further opines “[based] on my comprehensive review of the System, it is my professional opinion that there is not immediate or urgent need to commence the 1,000 foot water main replacement project that Aquarion is now proposing . . . That portion of the water main is currently operational and should continue to provide safe and adequate water supply for at least a period of time needed to complete the transfer of ownership to the Town, and probably significantly longer.”
In consideration of the evidence before the court at this time, Aquarion has failed to show the requisite likelihood that it will establish at a hearing on the merits that the Main Street water main replacement project is “clearly required to preserve the plant or to prevent interruption of service." Cohasset Water Co., 321 Mass. at 146. Moreover, Oxford will be obligated to pay Aquarion for investments in the water system ultimately found to be made under Aquarion’s obligation of good husbandry. Aquarion may, therefore, choose to go forward and its right to compensation can be vindicated if it succeeds after a full hearing on the merits. With respect to Aquarion’s argument that it may be years before issues impeding conveyance of the water system are resolved or before this matter is adjudicated on the merits, this court notes that Aquarion has considerable control over the pendency of these matters. Finally, approving capital investments to the water system, for which Oxford would have to pay Aquar-ion a considerable amount of money upon conveyance of the water system, before hearing the merits of the case in full, is not to the benefit of the public who will ultimately bear the cost.
ORDER
It is hereby ORDERED that the Plaintiff Aquarion Water Company of Massachusetts, Inc.’s motion for a preliminary injunction be DENIED.

Aquarion’s motion requested that this court approve compensation for additional proposed investments. Aquarion withdrew its request that this court address those investments at this time in the supplemental affidavit of Michelle Desorcy, Aquarion’s operations manager.