DEDHAM WATER COMPANY *vs.* TOWN OF DEDHAM
· & others[1]
(and a companion case[2]).

Norfolk.   April 4, 1985. — July 29, 1985.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Municipal Corporations*, Water supply. *Water Company. Sale*, Waterworks. *Dedham. Westwood. Statute*, Construction, Repeal.

The town of Dedham, to exercise its option under St. 1876, c. 138, § 10, as amended by St. 1882, c. 12, § 1, "to purchase the corporate property and all the rights and privileges" of the Dedham Water Company, must purchase all the company's property, including those assets geographically located in the neighboring town of Westwood, and a vote of the town of Dedham to purchase only those portions of the company's assets that lie within the municipal boundaries of Dedham was without effect. [517-521]

CIVIL ACTION commenced in the Superior Court Department on October 17, 1983.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on November 7, 1983.

The cases were consolidated for trial in the Superior Court Department and were heard by *Paul G. Garrity, J.*

The Supreme Judicial Court granted requests for direct appellate review.

*Jeffrey Swope* (*Paul W. Johnson, Joanne E. Barker & Paul D. Maggioni,* Town Counsel, with him) for the town of Dedham.

*Thomas F. Holt, Jr.* (*Cynthia L. Amara* with him) for Dedham Water Company.

---

[1] The Department of Environmental Quality Engineering (DEQE) and the Metropolitan District Commission (MDC). The State defendants did not file a brief or appear at oral argument.

[2] Town of Dedham *vs.* Dedham Water Company & Town of Westwood.

*Donald L. Connors, Eric W. Wodlinger & Mark A. Stein,* for the town of Westwood, submitted a brief.

LYNCH, J. The town of Dedham appeals from a partial summary judgment entered in the Superior Court in Norfolk County in these consolidated cases. The judgment interpreted Dedham's option under St. 1876, c. 138, § 10, as amended by St. 1882, c. 12, § 1, "to purchase the corporate property and all the rights and privileges" of the Dedham Water Company (company), which operates in Dedham and in the neighboring town of Westwood. The judge in the Superior Court found that, to exercise this right, Dedham must purchase all the company's property, including any facilities in Westwood as well as those within the municipal boundaries of Dedham. Dedham appealed to the Appeals Court, and we granted the applications of Dedham and the company for direct appellate review. We affirm the judgment of the Superior Court.

The parties disagree on the proper interpretation of Dedham's rights under St. 1876, c. 138, § 10. Dedham argues that certain events occurring and statutes enacted after 1876 have modified its rights under that statute, so that it now has the right to purchase only those facilities of the company within the town of Dedham. The company and Westwood both argue, on the other hand, that the language of St. 1876, c. 138, § 10, is clear and unambiguous. They contend that Dedham's rights have not been modified by subsequent events and statutory enactments, so that the judge below properly concluded that Dedham must purchase all the property of the company, which lies in the neighboring towns of Westwood and Dedham. We agree with the judge's interpretation of § 10.

The controversy arises from the following statutory and factual background. In 1876, the company was given its original franchise to "furnish[ ] the inhabitants of Dedham with pure water." St. 1876, c. 138, § 1. The terms of the original franchise also provided for Dedham's purchase option, which is the subject of this dispute. See St. 1876, c. 138, § 10. At the time the statute was enacted, the territory of the town of Dedham comprised the areas presently known as Dedham and Westwood. In 1897, Westwood was separately incorporated

and its territory was severed from that of Dedham. See St. 1897, c. 226.[3] In 1901, an independent company, the Westwood Water Company, began to supply water to some Westwood residents. In 1925, Westwood was conditionally granted the right to supply its own inhabitants with water, see St. 1925, c. 119, § 1,[4] but that right expired without ever having been exercised. In 1930, the Dedham Water Company was given legislative authorization to "extend its mains into the town of Westwood and . . . [to] supply the inhabitants of said town with water." St. 1930, c. 248, Part I, § 1. At the same time, Westwood was given "the absolute right at any time to purchase the franchise, property and all the rights and privileges of the Dedham Water Company within the limits of the town . . . ." *Id.* at § 5. The company began supplying water to the inhabitants of Westwood, and then in 1941 bought out the property and operations of the Westwood Water Company.

The company is presently an investor-owned public service water company serving approximately 40,000 residents in Dedham and Westwood, or about 98% of the total population of the two towns.[5] In the past, the company has drawn the approximately 3,000,000 gallons consumed per day by its customers from four well fields, including three in Westwood and one in Dedham. In March, 1979, two of four wells in the White Lodge well field in Westwood, the company's principal source of drinking water, were found to be contaminated.[6] The company removed those wells from service pursuant to an order of the DEQE, and undertook a study to investigate alternate water supplies.[7] The company retained a firm of groundwater

---

[3] Statute 1897, c. 226, § 10, provided: "All rights heretofore secured to corporations, if any there be, upon the territory hereby incorporated shall continue as if this act had not been passed."

[4] This grant of authority was conditioned upon Westwood's first taking or otherwise purchasing the facilities of the Westwood Water Company.

[5] Approximately one-third of the company's water supply is used in Westwood, with the remainder pumped into Dedham.

[6] The contaminated wells constitute approximately 30% of the total water supply available to the company.

[7] The company also brought suit against Cumberland Farms Dairy, Inc., in the United States District Court for the District of Massachusetts. The

geologists which recommended in its October, 1982, report
that a groundwater treatment plant be constructed in order to
manage the contamination problem. Dedham and Westwood
also hired a consulting firm, which agreed with the recommen-
dation for construction of a groundwater treatment plant. This
second firm concluded, moreover, that water rates would have
to increase by over 60% in Dedham and Westwood to cover
the estimated project cost of between $6,000,000 and
$6,500,000 and the estimated annual operating costs of approx-
imately $175,000. On January 8, 1982, the DEQE approved
the plans for the treatment plant.[8]

Dedham has since explored alternative ways of meeting the
water needs of its inhabitants. In a June, 1983, report, another
consultant concluded that it would be feasible for Dedham to
purchase only those facilities of the company located in Ded-
ham. Since Dedham would need additional water sources if
this proposal was adopted,[9] the report recommended connection
to the MDC water district.[10]

At a special town meeting on July 12, 1983, Dedham voted
to purchase "those portions of the assets of the Dedham Water
Company that lie within the municipal boundaries of the Town
of Dedham." At the same meeting, the Dedham board of
selectmen was authorized to apply for admission to the Met-
ropolitan Water District. On September 29, 1983, Dedham
officials met with representatives of the company to discuss

---

company is seeking $10,000,000 in damages for the contamination of the
White Lodge well field (to recover the costs of decontamination),
$5,000,000 in other compensatory damages, and $10,000,000 in punitive
damages.

[8] The Secretary of Environmental Affairs issued a certificate on April 20,
1983, concluding that the proposed project did not require an environmental
impact report. In a letter dated October 27, 1983, the DEQE approved the
plan.

[9] The report indicated that Dedham could develop a well field located in
Dedham.

[10] Dedham is located within ten miles of the State House, so it may be
entitled to join the MDC water district. See G. L. c. 92, § 10 (1) (1984
ed.). There are, however, other restrictions on the ability of towns within
this area to join the MDC water district.

the terms of the proposed purchase. At this meeting, the Dedham representatives stated that the town intended to purchase only those assets of the company located within Dedham's municipal boundaries. The company maintained, however, that any acquisition must include all its property, rights, and privileges, including those assets geographically located in Westwood.

On October 17, 1983, the company filed suit in Norfolk Superior Court against Dedham, the Department of Environmental Quality Engineering (DEQE), and the Metropolitan District Commission (MDC). The company sought declaratory and injunctive relief concerning the respective rights of the parties. On November 7, 1983, Dedham filed suit against the company and Westwood in the Supreme Judicial Court for Suffolk County; a single justice ordered the action transferred pursuant to G. L. c. 211, § 4A (1984 ed.) to the Norfolk Superior Court. Dedham filed a motion to dismiss the company's action;[11] the company moved to dismiss Dedham's action or in the alternative to consolidate the two cases. The judge denied the motions to dismiss, but granted the company's motion to consolidate. The parties subsequently brought separate motions for partial summary judgment. The judge issued his findings, rulings, and order on May 22, 1984, and on July 5 entered judgment.[12] On July 16, Dedham filed its notice of appeal.[13]

---

[11] The DEQE and the MDC also moved to dismiss the claims against them. The judge has never acted on their motion to dismiss.

[12] The judge made the following two rulings in his order for judgment: "(1) The Town vote of July 12, 1983, to purchase those portions of the assets of the Company that lie within Dedham's municipal boundaries is not binding upon or enforceable against either the Company or the Town of Dedham. (2) The Dedham Charter contained in St. 1876, c. 138, as amended by St. 1882, c. 12, requires the Town of Dedham to purchase all of the property, rights, and privileges of the Dedham Water Company in the event of a two-thirds vote to do so by voters present to accept the offer of the Water Company."

[13] A bill has since been filed in the General Court to authorize the town meetings of Dedham and Westwood to establish a joint water district. 1985 House Bill No. 6408.

1. *Statutory rights.* Dedham argues that any right which it may have been granted under St. 1876, c. 138, § 10, to purchase all the company's property has since been modified by subsequent events and legislative enactments, so that the town now must purchase only that portion of the property which lies within the Dedham boundaries. In particular, Dedham contends that its rights have changed as a result of the severance of Westwood from Dedham in 1897 and the enactment of St. 1930, c. 248, Part I, § 5, giving Westwood "the absolute right at any time" to purchase the property of the company lying within the boundaries of Westwood. Dedham argues that, by implication, its statutory right to purchase the property of the company no longer applies to that portion lying within the boundaries of Westwood. We disagree.

a. *Superior Court judgment.* The judge below found that the company was incorporated and chartered pursuant to St. 1876, c. 138, as amended by St. 1882, c. 12.[14] In interpreting the language of c. 138, § 10, he concluded that "it seems clear that the Town has an obligation to purchase *all* of the Company's assests should the Town decide to exercise its option to purchase those assests. The phrase 'the corporate property' is not modified or limited in any way. It seems that whoever drafted this provision desired that there be no question that the Town, if it were to purchase the Company's assets, would be obligated to purchase all of its assets and that the Company would be obligated to sell [all] of its assets. This becomes evident as one reads the next phrase in [c. 138, § 10], i.e., 'and all the rights and privileges of said company.'" On this basis, the judge ruled that, to exercise its option to buy the company's assets, Dedham is required "to purchase all of the property, rights and privileges of the Company, wherever located."

---

[14] Section 10 of St. 1876, c. 138, as amended, provides in relevant part: "The town of Dedham shall have the right at any time during the continuance of the charter granted to the Dedham Water Company to purchase the corporate property and all the rights and privileges of said company, at a price which may be mutually agreed upon between said corporation and the said town of Dedham; and the said corporation is authorized to make the sale of the same to said town."

The judge then considered whether subsequent action by the Legislature or the parties has changed Dedham's obligations in any way. He concluded that, by enacting St. 1897, c. 226, § 10,[15] the Legislature "obviously left intact and unchanged all of the rights granted to the Company in 1876, which included the franchise right to supply water to the geographical area encompassed by the Dedham municipal boundaries in 1876." The judge also considered the effect, if any, of statutes enacted in 1925 and 1930 upon Dedham's obligations under the 1876 statute. He found that St. 1930, c. 248, § 4,[16] affirmed that all the rights and privileges given to the company relative to the area designated as Dedham in 1882 remained in effect when Westwood was incorporated in 1897. He also concluded that by enacting St. 1930, c. 248, § 5, which gives Westwood the right to purchase the property of the company located within its town boundaries, the Legislature did not impliedly repeal St. 1876, c. 138, § 10. The judge found: "It is important to note that while the Town of Westwood was thus given the option to purchase the assets of the Company within Westwood's municipal limits, nothing in this section modifies or limits the rights and duties of the Town of Dedham or the Company as set forth in the Dedham Charter. . . . Had the General Court intended to narrow that charter, it could have expressed that limitation in the statute but it did not do so. In fact [in St. 1930, c. 248, Part I, § 4], the General Court reaffirmed the validity of the agreement set out in the original charter as it related to that area which was once West Dedham and then later was Westwood . . . ." The judge interpreted the language in c. 248, § 5, in light of the Dedham charter and concluded that it provides Westwood an "absolute," but not "exclusive" right to purchase certain assets of the company. Furthermore, the judge rejected Dedham's argument that action or inaction by the company has caused a modification of the Dedham charter.

---

[15] See note 3, *supra.*

[16] Statute 1930, c. 248, Part I, § 4, provides: "The rights and privileges within the Town of Westwood given by [St. 1876, c. 138] and by this act to the Dedham Water Company shall cease and terminate unless such company shall commence to supply water to the inhabitants of said town within one year of the passage of this act."

Finally, the judge considered whether the July 12, 1983, vote at the Dedham town meeting constitutes a valid acceptance of the company's statutory offer to sell. He concluded that the company's charter is similar to that discussed in *Cohasset Water Co.* v. *Cohasset*, 321 Mass. 137 (1947), where the court held that the town may acquire titles to the property of the company by way of contract and conveyance rather than by eminent domain. The judge in the instant case concluded that the Dedham charter creates a contract "that dictates the form that an acceptance of the outstanding offer to sell must take." He ruled, however, that Dedham's purported acceptance, by way of the vote at the town meeting, is not valid because it differs materially from the company's offer to sell and is therefore "at most only a counteroffer to purchase a portion of the company's assets." He concluded that neither party is obligated to perform under the provisions of St. 1876, c. 138, § 10, as amended by St. 1882, c. 12, § 1.

b. *Statutory language.* In construing Dedham's statutory rights and obligations, we look to established principles of statutory construction. "[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 585 (1981), quoting *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975). "Where the [legislative] intent is clear, the statute, if reasonably possible, must be construed to carry out that intent." *Industrial Fin. Corp.* v. *State Tax Comm'n*, 367 Mass. 360, 364 (1975), quoting *Commissioner of Corps. & Taxation* v. *Assessors of Boston*, 324 Mass. 32, 36 (1949). "When a statute does not define its words we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose. . . . We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such

as their use in other legal contexts and dictionary definitions." *Commonwealth* v. *Zone Book, Inc.,* 372 Mass. 366, 369 (1977).

When construing two or more statutes together, "[w]e are loath to find that a prior statute has been superseded in whole or in part in the absence of express words to that effect or of clear implication." *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds, supra.* "The longstanding test for the principle of implied repeal is whether the prior statute is so repugnant to, and inconsistent with, the later enactment that both cannot stand. Only then is the former statute repealed." *Commonwealth* v. *Graham,* 388 Mass. 115, 125 (1983).

We conclude that the judge below properly interpreted St. 1876, c. 138, § 10, as amended by St. 1882, c. 12, § 1, as providing that Dedham must purchase all the company's assets when it exercises its statutory option to "purchase the corporate property and all the rights and privileges" of the company. The language of § 10 provides clearly and without limitation that Dedham must purchase all the company's property, whether located within or beyond the town's municipal boundaries. Furthermore, our analysis of subsequent events and statutory enactments since 1882 reveals nothing to support Dedham's argument that its rights have somehow been modified.

In 1897, the southwest portion of Dedham was incorporated as the separate town of Westwood. See St. 1897, c. 226. Section 10 of that statute left intact "[a]ll rights heretofore secured to corporations . . . upon the territory hereby incorporated . . . ." Since there was no express modification of the company's rights in the area newly incorporated as Westwood, we interpret § 10 as perpetuating all rights which the company may have had in that portion of Dedham. Furthermore, no mention is made in c. 226 of any modification of Dedham's right to purchase the company's assets. We conclude that the 1897 incorporation of Westwood had no effect on any existing rights of the company or on Dedham's statutory option to purchase the company's property.

In 1925 and 1930, the Legislature enacted additional statutes affecting the rights and privileges of the company in Westwood. In St. 1925, c. 119, § 1, the Legislature granted to Westwood the right to "supply itself and its inhabitants with water," but did not expressly modify the company's rights. Westwood's right was to expire if not accepted at a town meeting within three years, see St. 1925, c. 119, § 10, and did in fact expire. In St. 1930, c. 248, Part I, § 1, the Legislature authorized the company to "extend its mains into . . . Westwood . . . subject, however, to the conditions and restrictions set forth in sections four and five of this Part [I]." Section 4 provided that the company's rights secured under St. 1876, c. 138, and St. 1930, c. 248, to provide water to Westwood "shall cease and terminate unless such company shall continue to supply water to the inhabitants of said town within one year of the passage of this act." Thus, § 4 affirms that the company had rights to provide water in Westwood. It is undisputed that the company exercised its rights within the required one-year period, so its rights in Westwood survived.

Under St. 1930, c. 248, Part I, § 5, Westwood has "the absolute right at any time to purchase the franchise, property and all the rights and privileges of the Dedham Water Company within the limits of the town." Dedham argues that Westwood's "absolute" right to purchase the company's Westwood facilities extinguished any earlier right which Dedham may have had to purchase the same property. In effect, Dedham contends that the Legislature intended to grant to Westwood the "exclusive" right to purchase the company's Westwood facilities. We disagree with Dedham's interpretation of the phrase "absolute right at any time" and conclude, moreover, that § 5 does not impliedly repeal the original purchase option granted to Dedham in St. 1876, c. 138, § 10. As used in this context, "absolute" may be defined as "free from conditional limitation: operating or existing in full under all circumstances without variation or exception . . . free from qualification." Webster's Third New Int'l Dictionary 6 (1961). We interpet Westwood's "absolute" right as an unconditional right to purchase the company's assets within its own municipal boundaries. We do not,

however, interpret this language as somehow repealing or superseding the right granted earlier to Dedham to purchase all the company's assets. Absent an express provision, we refuse to interpret this language as narrowing the scope of the option granted to Dedham. See *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 586 (1981). Furthermore, we do not conclude that the purchase right granted to Westwood in § 5 of c. 248, Part I, is so repugnant to or inconsistent with the right granted earlier to Dedham that it is necessary to find that the earlier statute is impliedly modified or repealed. See *Commonwealth* v. *Graham*, 388 Mass. 115, 125 (1983); *Doherty* v. *Commissioner of Admin.*, 349 Mass. 687, 690 (1965). We rule that the judge below did not err in finding that § 5 gave to Westwood a nonexclusive option to purchase the company's assets lying within its own boundaries, and that this statute did not modify Dedham's preexisting right to purchase all the company's assets.

Dedham's interpretation of the language of § 5 is not aided by other provisions of St. 1930, c. 248, Part I, authorizing the company to provide water service to the inhabitants of Westwood. The requirement that the company begin service in Westwood within one year had no effect on any right of Dedham or Westwood to purchase the company's assets. Nor is it appropriate to infer, absent express language to this effect, that the severance of Westwood from Dedham caused the company's franchise or Dedham's purchase option to shrink. Finally, Dedham has failed to demonstrate that the Legislature has enviced an intent in any statute enacted since 1930 to limit the town's purchase option to include only those assets located within its own municipal boundaries.

2. *Legislative policy.* Dedham argues that the ruling of the judge below is inconsistent with traditional principles of Massachusetts municipal law. Dedham contends that the result is inconsistent with the long-standing rule that local governments have only those municipal powers expressly granted to them by the Legislature. In particular, Dedham argues that permitting one town to operate a water system in another town would be

inconsistent with the rule that a town's authority to operate a water company does not extend beyond its boundaries. Dedham contends, furthermore, that permitting one town to control the water supply of another town is inconsistent with the rationale behind the statutory scheme exempting municipal water companies from regulation by the Department of Public Utilities.

Even assuming that Dedham's arguments accurately reflect legislative policy concerning municipalities, we are unwilling to overlook the clear statutory language governing Dedham's purchase option. The strength of Dedham's policy arguments is weakened, moreover, by the implications of Dedham's position in this case: Dedham seeks to dismember an existing water company and to leave to Westwood, alone, the burden of cleaning up or abandoning the contaminated water supply. There is no showing that it would not be feasible for the company, with the assistance of Dedham and Westwood, to construct a treatment plant in order to remove the contamination from the water supply. We are not persuaded that Dedham's policy arguments necessitate ignoring a clear legislative mandate and dismembering a system which has not been shown to be inadequate for either Dedham or Westwood.

3. *Conclusion.* In light of his interpretation of Dedham's statutory rights, the judge below found that the vote at the town meeting was ineffective to exercise its purchase option. We conclude that the judge did not err in ruling that Dedham's option under St. 1876, c. 138, § 10, as amended by St. 1882, c. 12, § 1, provides that it must purchase *all* the company's assets. Therefore, we affirm the judgment below that the vote to acquire only those assets within the Dedham boundaries was ineffective to exercise that option. See *Cohasset Water Co.* v. *Cohasset,* 321 Mass. 137, 143-144 (1947); *Braintree Water Supply Co.* v. *Braintree,* 146 Mass. 482, 486 (1888).

*So ordered.*