Commonwealth *vs.* Paul Katsirubis.[1]

No. 96-P-2045.

Suffolk. January 12, 1998. - June 25, 1998.

Present: Greenberg, Dreben, & Lenk, JJ.

*Forgery. Uttering Forged Instrument. Elections. Statute,* Construction, Repeal. *Practice, Criminal,* Double jeopardy, Duplicative punishment.

This court concluded that G. L. c. 56, § 11, proscribing the false making of nomination papers, did not impliedly repeal the general forgery and uttering statutes, G. L. c. 267, §§ 1 & 5. [134-136]

Convictions and sentences imposed after guilty pleas on charges of forgery (G. L. c. 267, § 1), uttering (G. L. c. 267, § 5), and falsely making nomination papers (G. L. c. 56, § 11), were not duplicative. [136-137]

A claim in an appeal from criminal convictions after a plea of guilty, that the judge failed to advise the defendant pursuant to G. L. c. 278, § 29D, of the adverse consequences of a conviction in immigration or deportation proceedings, was without merit, where there was no plausible showing of materiality of such a colloquy to the defendant's circumstances [137-138]; and there was no merit to the defendant's claim that the judge failed to advise him of his right to withdraw his plea if the judge were to give him a sentence greater than that recommended by the Commonwealth, where the judge did not exceed that recommendation [138].

Indictments found and returned in the Superior Court Department on July 21, 1992.

Pleas of guilty were received by *Thomas E. Connolly,* J., and a motion for a new trial, filed on May 6, 1996, was heard by him.

*Wayne R. Murphy* for the defendant.

*Annette C. Benedetto,* Assistant Attorney General, for the Commonwealth.

Greenberg, J. To get on the primary ballot as a candidate for Norfolk County sheriff, Paul Katsirubis (Katsirubis) filed

---

[1]As is our custom, we spell the defendant's name as it appears on the indictments.

nomination papers which the Commonwealth, in one indictment, alleged to be forged. G. L. c. 267, § 1.[2] In a second indictment, the Commonwealth charged Katsirubis with uttering. G. L. c. 267, § 5.[3] A third indictment, containing twelve counts, alleged that certificates of nomination were falsely made in violation of G. L. c. 56, § 11.[4] His offer of guilty pleas to all of the charges was accepted on October 12, 1993, by a judge of the Superior Court. After a dispositional hearing on October 27, 1993, Katsirubis was sentenced on the forgery and uttering indictments to concurrent two-year terms at the house of correction, three months to be served and the balance suspended with supervised probation. As for the offense under G. L. c. 56, § 11, involving the filing of false certificates, the judge saw fit to impose a fine of $12,000 ($1,000 for each of the twelve counts). Over two years later, on January 5, 1996, a different judge ordered Katsirubis's probationary sentence revoked for subsequent offenses.

---

[2]General Laws c. 267, § 1, states, in pertinent part:

> "Whoever, with intent to injure or defraud, falsely makes, alters, forges or counterfeits a public record, or a certificate, return or attestation of a clerk or . . . town clerk or any other public officer . . . shall be punished by imprisonment in the [S]tate prison for not more than ten years or in jail for not more than two years."

[3]General Laws c. 267, § 5, states, in pertinent part:

> "Whoever, with intent to injure or defraud, utters and publishes as true a false, forged or altered record, deed [or] instrument . . . , knowing the same to be false, forged or altered, shall be punished by imprisonment in the [S]tate prison for not more than ten years or in jail for not more than two years."

[4]General Laws c. 56, § 11, states:

> "Whoever falsely makes or wilfully alters, defaces, mutilates, destroys or suppresses a certificate of nomination or nomination paper, or letter of withdrawal of a name from such paper, or an initiative petition or a petition for the submission of a question to the voters, or unlawfully signs any such certificate, paper, letter or petition, or files any such certificate, paper, letter or petition, knowing the same to be falsely made or altered, shall be punished by a fine of not more than one thousand dollars or by imprisonment for not more than one year."

On September 5, 1996, Katsirubis filed a motion for a new trial, seeking to withdraw all three guilty pleas. See Mass.R. Crim.P. 30(b), 378 Mass. 900 (1979). After a hearing, the original plea judge denied the motion.[5] Katsirubis has appealed.

1. *The criminal episode.* On May 26, 1992, the deadline for filing nomination papers to obtain a place on the ballot for county-wide office, Katsirubis arrived at the Secretary of State's office. In his possession were papers containing the requisite number of 1,000 signatures. There was a serious question as to their validity. The Secretary of State's office had been alerted by the Quincy city clerk's office of the following circumstances. On April 28, 1992, Katsirubis's father had turned in twenty-four nomination papers to the city clerk's office on behalf of his son for certification. On the same day, Katsirubis himself had turned in one nomination paper, and was given a receipt for one paper. A few days later, Katsirubis contacted the clerk's office and accused them of losing ten nomination papers. To prove the error, he went to the clerk's office and presented the receipt for the one paper turned in by him on April 28, which now bore the number "11," ten more than originally presented to the clerk. He also produced photocopies of the "lost" nomination papers complete with forged signatures of voters. Not surprisingly, the clerk refused to certify the additional signatures on the so-called "lost" papers. On May 26, 1992, when Katsirubis filed his nomination papers with the Secretary of State, he falsely inserted the number "11" in the certification statement on the back of the filing sheet. Katsirubis also used similar schemes to file false nomination papers in the clerks' offices in Avon and Cohasset. Someone called State police investigators, who quickly detected Katsirubis's scam. As a result of his unsuccessful attempt to file the uncertified missing nomination papers with the Secretary of State's office, an investigation commenced. In the end, Katsirubis confessed at an interview with the State police to forgery of the additional signatures on the nomination papers and alteration of the numbers on the receipts issued by the clerks' offices.

2. *Implied repeal.* Katsirubis's strongest argument is that because G. L. c. 56, § 11, the false making of a certificate of

---

[5]After the original plea judge denied a motion to stay execution of sentence pursuant to Mass.R.A.P. 6, as amended, 378 Mass. 930 (1979), a single justice of the Appeals Court stayed the rest of Katsirubis's two-year sentence pending resolution of the appeal.

nomination statute, prohibits the same conduct covered by G. L. c. 267, §§ 1 & 5, the subsequent false making statute impliedly repealed the application of the general forgery and uttering statutes. He contends that the statutes are so repugnant to, or in conflict with, each other that it must be presumed that the Legislature intended that G. L. c. 56, § 11, should repeal G. L. c. 267, §§ 1 & 5.

We start with the proposition that "[w]hen construing two or more statutes together, '[w]e are loath to find that a prior statute has been superseded in whole or in part in the absence of express words to that effect or of clear implication.' " *Dedham Water Co.* v. *Dedham*, 395 Mass. 510, 518 (1985), quoting from *Registrar of Motor Vehicles* v. *Board of Appeal on Motor Vehicle Liab. Policies & Bonds*, 382 Mass. 580, 585 (1981). See *Commonwealth* v. *Russo*, 421 Mass. 317, 523 (1995). The cases disfavor invoking the doctrine of implied repeal in the absence of express statutory directive. *Commonwealth* v. *Hayes*, 372 Mass. 505, 511-512 (1977). *Commonwealth* v. *Jones*, 382 Mass. 387, 391 (1981). *Commonwealth* v. *Graham*, 388 Mass. 115, 125 (1983). *Commonwealth* v. *Hudson*, 404 Mass. 282, 286 (1989). That two statutes covering the same subject matter overlap in the sense that "they both prohibit the same act does not, without more, make them conflicting." 1A Singer, Sutherland Statutory Construction § 23.09, at 332 (5th ed. 1992). However, in the absence of some rational basis for reconciliation, the general statute must yield to the specific statute. *Peireira* v. *New England LNG Co.*, 364 Mass. 109, 118 (1973).

Applying these principles to the statutes before us, we conclude that the relevant portions of each are complementary and not inconsistent. General Laws c. 56, § 11, inserted in 1946 (by St. 1946, c. 537, § 11), was part of a comprehensive scheme to prevent fraud in primary elections. The statute facilitates the apprehension and prosecution of election scofflaws by providing public officials with alternative offenses and penalties. Not only does it prohibit the type of conduct admitted to here, but it also proscribes conduct that might be impossible to prosecute under the forgery and uttering statutes, including making false certificates or nomination papers.

Under G. L. c. 267, § 1, forgery of official records, certificates, and other writings were crimes at the time G. L. c. 56, § 11, was adopted by the Legislature. Nothing in the later statute or its history suggests any legislative intent to abrogate

existing law proscribing forgery or uttering. The Legislature "is presumed to act with full knowledge of existing laws, including statutes." *Wood* v. *American Family Mut. Ins. Co.*, 148 Wis. 2d 639, 646 (1989). Where a newly enacted statute is silent about an already existing one, the indication is that the Legislature did not intend to repeal the existing one. 1A Singer, Sutherland Statutory Construction § 23.10, at 353 (5th ed. 1992 & 1998 Supp.). See *Commonwealth* v. *Vickey*, 381 Mass. 762, 765-766 (1980). In other comparable contexts, we have similarly rejected implied repeal arguments. See, e.g., *Commonwealth* v. *Romero*, 25 Mass. App. Ct. 51, 52 (1987) (the defendant was charged under G. L. c. 56, § 11, as well as the perjury statute, G. L. c. 268, § 1A; both convictions were upheld).[6]

3. *Duplicative punishments.* The two split prison sentences imposed by the plea judge pursuant to G. L. c. 279, § 1A, on the forgery and uttering charges, were to be served concurrently. However, the defendant was also sentenced to pay a fine in the amount of $12,000 on the G. L. c. 56, § 11, offenses. The defendant argues that the sentences constitute unlawful duplicative punishment under both State and Federal double jeopardy principles. It is his contention that the acts were "so closely related in fact as to constitute in substance but a single crime," *Commonwealth* v. *Sanchez*, 405 Mass. 369, 381 (1989) (internal citations omitted), and that "the sequence of [events] was so close that as a matter of fact and sense the acts involved were so intertwined as to be one." *Commonwealth* v. *Sullivan*, 20 Mass. App. Ct. 802, 809 (1985).

The sentences are not duplicative. Each offense requires proof of a fact which the others do not. General Laws c. 56, § 11, requires proof that the writing in question be "a certificate of nomination or nomination paper, or letter of withdrawal of a name from such paper, or an initiative petition or a petition for

---

[6]Cf. *Commonwealth* v. *Apalakis*, 396 Mass. 292 (1985), where the defendant, an examiner with the Registry of Motor Vehicles, was found guilty of falsely making drivers' licenses, in violation of G. L. c. 267, § 1. The court reversed the judgment, noting that there was another statute which spoke "directly to the type of conduct in which the defendant engaged." *Id.* at 301. Although the *Apalakis* case did not present an implied repeal issue, it is nevertheless instructive to our analysis in the case before us. Katsirubis not only falsified the receipts and certificates, he also forged signatures of voters. Therefore, his prosecution under both the forgery statute and the false nomination papers statute does not create an inconsistency that necessitates implied repeal.

the submission of a question to the voters." While the mens rea element of G. L. c. 56, § 11, requires only a wilful act, G. L. c. 267, § 1, the forgery statute, and G. L. c. 267, § 5, the uttering statute, both require proof that the defendant had a specific "intent to injure or defraud." Therefore, we conclude that the matter is governed in all material respects by our recent decision in *Commonwealth* v. *Arriaga*, 44 Mass. App. Ct. 382 (1998). In that case, we concluded that *Commonwealth* v. *Crocker*, 384 Mass. 353, 357 (1981), dictates the outcome, i.e., a conduct-based standard in instances of successive prosecution, but an elements-based approach in the context of multiple punishments imposed at a single trial. *Commonwealth* v. *Arriaga*, 44 Mass. App. Ct. at 391. See *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871).

Katsirubis does not dispute that the proofs required are indeed separate. Rather, he relies on *Commonwealth* v. *Jones*, 382 Mass. at 394, where the court was persuaded that the Legislature did not intend to permit punishments for both vehicular homicide and involuntary manslaughter, *ibid.*, even though the offenses required separate elements of proof. In the context of the legislative history, the court ruled that the Legislature intended to provide some middle ground between the felony of manslaughter with its maximum penalty of twenty years' imprisonment and G. L. c. 90, § 24G, with its relatively less severe penalty. *Id.* at 390. Unlike the *Jones* case, which involved one core act that gave rise to the prosecution, here there were separate crimes committed over a period of weeks. In that sense, Katsirubis did not receive multiple punishments for the same offense. See *Kuklis* v. *Commonwealth*, 361 Mass. 302, 305 (1972); *Salemme* v. *Commonwealth*, 370 Mass. 421, 423-424 (1976); *Commonwealth* v. *Gallarelli*, 372 Mass. 573, 576-578 (1977); *Commonwealth* v. *Rodriguez*, 11 Mass. App. Ct. 379 (1981).

4. *Miscellaneous claims.* Neither of the two remaining arguments raised on appeal have any merit, and only a brief discussion is warranted.

Katsirubis filed a second (amended) motion for a new trial on September 3, 1996. In the motion itself, he made two principal allegations. First, he contended that the plea colloquy was defective because of the judge's failure to advise him pursuant to G. L. c. 278, § 29D, that if he was not a citizen of the United States, a conviction might have adverse consequences concern-

ing his prospects of becoming one, or result in deportation. See *Commonwealth* v. *Mahadeo*, 397 Mass. 314, 318 (1986); *Commonwealth* v. *Lamrini*, 27 Mass. App. Ct. 662, 667 (1989). That omission gives rise to no claim here because Katsirubis has not made any plausible showing of materiality concerning the judge's mistake.

As the record does not disclose the existence of any plea agreement pursuant to Mass.R.Crim.P. 12(c)(2), as amended, 399 Mass. 1215 (1987), Katsirubis's second argument, that the judge's failure to advise him of his right to withdraw the plea if he received a sentence greater than that recommended by the Commonwealth, has no merit.[7] An examination of the transcript of the plea hearing shows that the judge was assiduous in assuring Katsirubis that he would obtain a presentence report from the probation department. In fact, the actual sentencing was postponed for that purpose. In the end, the judge did not exceed the prosecutor's recommendation.

> *Order denying the defendant's motion for a new trial affirmed.*

---

[7] The unequivocal answers of the defendant appearing in the transcript show that the defendant understood the sentence he was to receive. See *Commonwealth* v. *Morrow*, 363 Mass. 601, 607 (1973); *Commonwealth* v. *Perry*, 389 Mass. 464, 470 (1983); *Commonwealth* v. *Stanton*, 2 Mass. App. Ct. 614, 622 (1974).